STATE OF CONNECTICUT v. TIMOTHY JAMES DURKIN
(14203)

SHEA, CALLAHAN, GLASS, COVELLO and BORDEN, Js.

Argued May 31—decision released July 23, 1991

*Judith Rossi,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Richard Palombo,* assistant state's attorney, for the appellant (state).

*Sigmund L. Miller,* with whom was *George P. D'Amico,* for the appellee (defendant).

GLASS, J. In this certified appeal by the state from the judgment of the Appellate Court in *State* v. *Durkin,* 23 Conn. App. 642, 583 A.2d 1303 (1990), we consider whether a defendant can be found voluntarily to have waived the right of presence at an ongoing court proceeding upon a failure to appear in court without explanation other than the fact that, in the twenty-one day interim resulting from a continuance granted by the court at the defendant's request, the defendant pleaded guilty and was sentenced and incarcerated on an unrelated charge in a foreign state. We conclude that out-of-state incarceration, alone, does not preclude a trial court from inferring such a defendant's voluntary waiver from the totality of the circumstances. Accordingly, we reverse.

In January, 1989, following his conviction of the crime of possession of narcotics, the defendant, Timothy James Durkin, was sentenced to a term of five years

imprisonment, execution suspended, with three years probation. The conditions of the defendant's probation included the special condition that he remain "drug free," and the standard condition that he obtain permission from his probation officer before leaving Connecticut. Despite his written acknowledgment that he understood these conditions, subsequent drug tests revealed that the defendant had used cocaine on four occasions between March and May, 1989. The defendant thereafter was arrested pursuant to General Statutes § 53a-32[1] and was charged with violating his

[1] "[General Statutes] Sec. 53a-32. VIOLATION OF PROBATION OR CONDITIONAL DISCHARGE: ARREST; PROCEDURE. (a) At any time during the period of probation or conditional discharge, the court or any judge thereof may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation or conditional discharge, or may issue a notice to appear to answer to a charge of such violation, which notice shall be personally served upon the defendant. Any such warrant shall authorize all officers named therein to return the defendant to the custody of the court or to any suitable detention facility designated by the court. Any probation officer may arrest any defendant on probation without a warrant or may deputize any other officer with power to arrest to do so by giving him a written statement setting forth that the defendant has, in the judgment of the probation officer, violated the conditions of his probation. Such written statement, delivered with the defendant by the arresting officer to the official in charge of any correctional center or other place of detention, shall be sufficient warrant for the detention of the defendant. After making such an arrest, such probation officer shall present to the detaining authorities a similar statement of the circumstances of violation. Provisions regarding release on bail of persons charged with a crime shall be applicable to any defendant arrested under the provisions of this section. Upon such arrest and detention, the probation officer shall immediately so notify the court or any judge thereof. Thereupon, or upon an arrest by warrant as herein provided, the court shall cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charges. At such hearing the defendant shall be informed of the manner in which he is alleged to have violated the conditions of his probation or conditional discharge, shall be advised by the court that he has the right to retain counsel and, if indigent, shall be entitled to the services of the public defender, and shall have the right to cross-examine witnesses and to present evidence in his own behalf.

"(b) If such violation is established, the court may continue or revoke the sentence of probation or conditional discharge or modify or enlarge the

probation by failing to remain "drug free." The defendant pleaded not guilty to the charge and was released on a written promise to appear.

On September 20, 1989, the defendant appeared before the trial court for the commencement of his violation of probation hearing. After the state presented its entire case and rested, the defendant requested and was granted a continuance until October 11, 1989, on which date, defense counsel stated, the defense would present its case.[2] At the October 11, 1989 hearing, however, the defendant did not appear in court. Defense counsel explained that at some point between the hearings, the defendant had been sentenced and incarcerated on an unrelated charge in either North or South Carolina. While professing a lack of knowledge as to the precise circumstances prompting the defendant's absence and incarceration, defense counsel indicated that he intended to assist the defendant in preparing a request to return voluntarily to Connecticut under the Interstate Agreement on Detainers (IAD); see General Statutes § 54-186; for the purpose of answering an unrelated felony charge then pending in Connecticut. Defense counsel then proposed that the revocation proceeding be continued until the defendant's return. Expressing its belief that the IAD did not apply to the revocation proceeding because it already had commenced and thus was not a "pending" matter, the trial court ordered a continuance until October 18, 1989, to permit the parties to research applicable law.[3]

---

conditions, and, if such sentence is revoked, require the defendant to serve the sentence imposed or impose any lesser sentence. No such revocation shall be ordered, except upon consideration of the whole record and unless such violation is established by reliable and probative evidence."

[2] Defense counsel later informed the court that he had intended to call the defendant as a witness at the October 11, 1989 hearing.

[3] There is no indication in the record that defense counsel ever assisted the defendant in filing a request to return voluntarily to Connecticut under

At the October 18, 1989 hearing, the defendant again failed to appear in court. Defense counsel notified the trial court that the sentencing and incarceration of the defendant had occurred in South Carolina, and further indicated that he did not believe that the defendant had "intended when he went down to South Carolina to end up going to prison, and I don't know exactly what did happen." Finding the explanation provided for the defendant's absence to be both unsubstantiated and insufficient, the trial court determined that his absence was a consequence of his voluntary act of leaving Connecticut "to meet whatever he felt to be his responsibilities" in South Carolina. The trial court then granted the state's request to proceed in the defendant's absence and found him in violation of the terms of his probation on the basis of the evidence introduced by the state. As a consequence, the trial court terminated the defendant's probation, opened the original judgment, and reimposed the original sentence of five years imprisonment. The trial court nonetheless granted defense counsel's request for a continuance until November 20, 1989, to obtain a certified copy of the defendant's South Carolina conviction. Although refusing to vacate its orders, the trial court informed defense counsel that if, at the subsequent hearing, he "can persuade the court to modify [or] change . . . orders, fine. I have no problems with that."

the IAD, nor is there any indication that the defendant otherwise filed such a request. Unless the defendant initiated a proceeding under the IAD to return to Connecticut for the disposition of other criminal charges, the probation violation proceeding could not have been completed until the defendant had served his South Carolina sentence. The IAD is not available for probation violation charges. "[T]he phrase 'untried indictment, information or complaint' in Art. III [of the IAD] refers to *criminal charges pending* against a prisoner. A probation-violation charge, which does not accuse an individual with having committed a criminal offense in the sense of initiating a prosecution, thus does not come within the terms of Art. III." *Carchman* v. *Nash*, 473 U.S. 716, 725, 105 S. Ct. 3401, 87 L. Ed. 2d 516 (1985).

At the November 20, 1989 hearing, defense counsel produced a certified copy of the South Carolina conviction indicating that on September 26, 1986, less than one week after the commencement of the Connecticut revocation proceeding, the defendant had pleaded guilty to a South Carolina charge of possession of cocaine with intent to distribute, and that he had been sentenced to a term of five years imprisonment. The document also bore a South Carolina judge's handwritten notation of the following "special condition": "I would like this sentence to be concurrent with any revocation in Connecticut if possible." Upon examination of the document, the trial court found that its contents lent additional support to its prior determination that the defendant had "acted on his own to leave the jurisdiction of this state, and do whatever he considered himself doing, and therefore his absence here was of his own volition." The trial court further inferred from the presiding judge's notation respecting a "revocation in Connecticut" that the defendant had "left this jurisdiction . . . knowing he had . . . the revocation of probation here. And, then told the authorities in the State of South Carolina about it—how else would they know."[4] Over defense counsel's assertion that the defendant's "involuntary" detention in South Carolina prohibited the court from acting in the defendant's absence, the trial court terminated the proceeding, thus leaving its judgment revoking the defendant's probation undisturbed.[5]

The defendant appealed from the judgment of revocation of probation to the Appellate Court. Conclud-

[4] The defendant does not now claim that he had been unaware of the date, time or place that the revocation proceeding had been scheduled to continue.

[5] The court also declined to rule on the defendant's oral motions for a mistrial, to revoke the orders previously entered, and to reopen the judgment.

ing that the trial court abused its discretion in finding that the defendant voluntarily had waived his right of presence at the revocation proceeding, the Appellate Court reversed the judgment. See *State* v. *Durkin,* supra. We granted the state's petition for certification to appeal limited to the following question: "Did the Appellate Court correctly conclude that the trial court abused its discretion when it found that the defendant was voluntarily absent from his probation revocation hearing?" *State* v. *Durkin,* 217 Conn. 808, 584 A.2d 1192 (1991). We answer this question in the negative.

The due process clause of the fourteenth amendment to the United States constitution requires that certain minimum procedural safeguards be observed in the process of revoking the conditional liberty created by probation. *Black* v. *Romano,* 471 U.S. 606, 610, 105 S. Ct. 2254, 85 L. Ed. 2d 636 (1985); see *Morrissey* v. *Brewer,* 408 U.S. 471, 489, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972). Among other things, due process entitles a probationer to a final revocation hearing under the conditions set forth in *Morrissey* v. *Brewer,* supra, which include an *"opportunity* to be heard *in person* and to present witnesses and documentary evidence . . . ." (Emphasis added.) Id.; see *Gagnon* v. *Scarpelli,* 411 U.S. 778, 782, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973); see also *State* v. *Roberson,* 165 Conn. 73, 81–82, 327 A.2d 556 (1973); *State* v. *Crawford,* 38 Conn. Sup. 472, 474–75, 451 A.2d 583 (1982); see generally General Statutes § 53a-32 (a).[6] Since our courts are vested with the discretion to order a continuation of probation in lieu of a revocation; General Statutes § 53a-32 (b);[7] see Practice Book § 943; a probationer must be afforded the opportunity at such a hearing to demonstrate "not only that he did not violate the conditions [of proba-

---

[6] See footnote 1, supra.

[7] See footnote 1, supra.

tion], but also that there was a justifiable excuse for any violation or that revocation is not the appropriate disposition." *Black* v. *Romano,* supra, 612; see *United States* v. *Brown,* 899 F.2d 189, 194 (2d Cir. 1990). These procedural safeguards protect the probationer "against revocation of probation in a constitutionally unfair manner." *Black* v. *Romano,* supra, 613.

Nonetheless, like the constitutional right of presence at a criminal trial,[8] a probationer's due process rights in a final revocation proceeding may knowingly and voluntarily be waived. See *Sekou* v. *Warden,* 216 Conn. 678, 694, 583 A.2d 1277 (1990); *State* v. *Simino,* 200 Conn. 113, 128–29, 509 A.2d 1039 (1986). Waiver need not be express, but rather, may be implied from the totality of the circumstances, including the probationer's conduct. *State* v. *Drakeford,* 202 Conn. 75, 79, 519 A.2d 1194 (1987). If unaccompanied by a justification in the nature of " 'good cause' "; *State* v. *Gonzalez,* 205 Conn. 673, 688, 535 A.2d 345 (1987); see *United States* v. *Sanchez,* 790 F.2d 245, 249 (2d Cir.), cert. denied, 479 U.S. 989, 107 S. Ct. 584, 93 L. Ed. 2d 587 (1986); a probationer's voluntary absence from a known, ongoing revocation proceeding " 'operates as a waiver' " of his rights therein, and " 'leaves the court free to proceed . . . in a like manner and with like effect as if he were present.' " *Taylor* v. *United States,* 414 U.S. 17, 19, 94 S. Ct. 194, 38 L. Ed. 2d 174 (1973); see Practice Book § 968; cf. *Talton* v. *Warden,* 171 Conn. 378, 386, 370 A.2d 965 (1976). A trial court's determination of waiver will not be disturbed except for an abuse of discretion. *State* v. *Simino,* supra, 132; see *Talton* v. *Warden,* supra.

---

[8] "Although a [probation] revocation proceeding must comport with the requirements of due process, it is not a criminal proceeding." *Minnesota* v. *Murphy,* 465 U.S. 420, 435 n.7, 104 S. Ct. 1136, 79 L. Ed. 2d 409, reh. denied, 466 U.S. 945, 104 S. Ct. 1932, 80 L. Ed. 2d 477 (1984).

In concluding that the trial court abused its discretion in determining that the defendant voluntarily had waived his due process right of presence at the revocation proceeding, the Appellate Court viewed certain dictum in *Diaz* v. *United States,* 223 U.S. 442, 32 S. Ct. 250, 56 L. Ed. 500 (1912), as answering "in the negative" the question "whether a defendant in custody in another state can be deemed to have waived his right to be present." *State* v. *Durkin,* supra, 23 Conn. App. 649. The Appellate Court also drew support from *United States* v. *Fontanez,* 878 F.2d 33 (2d Cir. 1989), and *United States* v. *Crutcher,* 405 F.2d 239 (2d Cir. 1968), cert. denied, 394 U.S. 908, 89 S. Ct. 1018, 22 L. Ed. 2d 219 (1969), which, in the Appellate Court's view, stood for the proposition that voluntary waiver cannot be inferred "when a defendant was absent due to a subsequent arrest on an unrelated matter." *State* v. *Durkin,* supra, 23 Conn. App. 649. On the basis of these precedents, the Appellate Court determined that the defendant had satisfied his burden to justify his absence from the known revocation proceeding when the "defendant's counsel offered the fact that his client was incarcerated in another state." Id., 650. Finding the record " 'silent' " but for that fact, the Appellate Court held that "the trial court was incorrect in finding that the defendant voluntarily waived his right to be present at the violation of probation hearing." Id.

The state attacks the Appellate Court's focus on the defendant's incarceration to the exclusion of the totality of the circumstances from which, the state contends, the trial court reasonably inferred the defendant's voluntary waiver. According to the state, the circumstances supporting the trial court's determination include defense counsel's representation that the defendant "went down" to South Carolina despite his

knowledge of the date, time and place that the revocation hearing had been scheduled to continue, the undisputed fact that the defendant's departure from this state was unauthorized by his probation officer in contravention of a standard condition of his probation, and the lack of evidence demonstrating that either the defendant's initial absence or his subsequent incarceration was officially compelled or otherwise involuntary. The state argues that because it was the defendant's burden to justify his absence, the Appellate Court should not have construed any silence in the record in his favor. We agree.

In *Diaz* v. *United States,* supra, 455, the United States Supreme Court commented, in dicta, that courts "have regarded an accused who is in custody . . . as incapable of waiving the right" of presence. The court's underlying rationale was that when in custody, a defendant's "presence or absence is not within his own control . . . ." Id. While the fact of a defendant's custody undoubtedly supplies a sufficient predicate for an inference of involuntary absence in accordance with the *Diaz* rationale, we do not read *Diaz* as mandating such an inference where the surrounding circumstances not only suggest the inapplicability of that rationale, but also support a reasonable inference to the contrary. "The issue of voluntariness is a question of fact which should not be resolved by per se formulations." *People* v. *Epps,* 37 N.Y.2d 343, 350, 334 N.E.2d 556, 372 N.Y.S.2d 606, cert. denied, 423 U.S. 999, 96 S. Ct. 430, 46 L. Ed. 2d 374 (1975); see *United States* v. *Fontanez,* supra, 36.

Furthermore, "[w]hatever force was once exerted by the dictum that a defendant in custody does not have the power to waive his right to be present at his trial, see *Diaz* v. *United States,* [supra]; *United States* v. *Crutcher,* supra . . . 243, has been diminished by

*Illinois* v. *Allen,* 397 U.S. 337, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970), which held that a defendant who persistently behaves disruptively at his trial may lose his right to be present." *Wilson* v. *Harris,* 595 F.2d 101, 104 n.3 (2d Cir. 1979). A defendant in custody who deliberately elects to remain in a jail cell despite the extension of a known opportunity to attend trial likewise may effectively waive the right of presence. Id.; see *People* v. *Epps,* supra; see also *Broecker* v. *State,* 168 Ind. App. 231, 237, 342 N.E.2d 886 (1976); *State* v. *Kasper,* 152 Vt. 435, 440, 566 A.2d 982 (1989); cf. *Sekou* v. *Warden,* supra, 698. Where, as in these situations, the circumstances give rise to a reasonable inference that a defendant's presence or absence at a known proceeding was "within his [or her] own control"; *Diaz* v. *United States,* supra; a trial court is not precluded from inferring that despite the fact of custody, the defendant waived the right of presence voluntarily.

Considering the totality of the circumstances before the trial court in this case,[9] we cannot agree with the Appellate Court's conclusion that the trial court abused its discretion in determining that the defendant voluntarily had waived his due process rights in the revoca-

---

[9] Before the Appellate Court and this court, defense counsel attempted to explain the defendant's absence from the revocation proceeding by representing that "the defendant had been presented, the day he appeared in South Carolina, with the choice of pleading guilty and accepting a five year sentence or facing trial and a much longer term." *State* v. *Durkin,* 23 Conn. App. 642, 650–51 n.4, 583 A.2d 1303 (1990). Defense counsel did not, however, make any such representation to the trial court at the time of its determination of waiver. Because a reviewing court's assessment of a trial court's determination of waiver cannot be based on hindsight, but must be confined to the trial court record and the circumstances confronting the trial court at the time of its determination; cf. *United States* v. *Sanchez,* 790 F.2d 245, 251 (2d Cir.), cert. denied, 479 U.S. 989, 107 S. Ct. 584, 93 L. Ed. 2d 587 (1986); we decline to consider whether our conclusion would be different if defense counsel had made the above representation to the trial court.

tion proceeding. The defendant, at liberty on a written promise to appear, was obliged to attend the revocation proceeding on the date that he knew it had been scheduled to continue. *United States* v. *Tortora,* 464 F.2d 1202, 1208 (2d Cir.), cert. denied sub nom. *Santoro* v. *United States,* 409 U.S. 1063, 93 S. Ct. 554, 34 L. Ed. 2d 516 (1972). The only proffered explanation for his failure to do so was that he "went down" to South Carolina to tend to a criminal matter, an act that ultimately led to his guilty plea, conviction and incarceration there. Because the defendant was bound by the standard condition of his probation to obtain permission before leaving Connecticut, his unauthorized departure alone evinced a defiance of the laws of this state and a disregard for his responsibilities here. Even after indicating that he had spoken to the defendant's South Carolina attorney, defense counsel never suggested to the court that either the defendant's departure or his apparent election to submit to the South Carolina authorities rather than the jurisdiction of a Connecticut court was the product of "official connivance or obstruction"; *People* v. *Epps,* supra; or otherwise resulted from anything but the defendant's free, uncompelled choice. Compare *United States* v. *Fontanez,* supra, 36 (defendant's absence "a direct result of being *taken* into police custody in connection with a crime unrelated to trial [emphasis added]); *United States* v. *Crutcher,* supra, 242 (defendant "arrested by State authorities . . . on charges unrelated to this proceeding").

Finally, the trial court was not required to afford the defendant the benefit of his failure to provide an adequate explanation for his absence. The defendant's absence from the known revocation proceeding cast the burden on him to demonstrate that his absence was in some fashion justified by "good cause." *State* v. *Simino,*

supra; see *United States* v. *Sanchez,* supra, 249. In view of the defendant's failure to do so, and in light of the totality of the circumstances before the trial court, we conclude that the Appellate Court improperly determined that the trial court abused its discretion in finding that the defendant voluntarily had waived his due process rights in the probation revocation proceeding.[10]

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion the other justices concurred.

---

[10] We decline the defendant's invitation to uphold the Appellate Court's decision on the ground that its proper application of the "balancing" test enunciated in *United States* v. *Tortora,* 464 F.2d 1202, 1210 (2d Cir.), cert. denied sub nom. *Santoro* v. *United States,* 409 U.S. 1063, 93 S. Ct. 554, 34 L. Ed. 2d 516 (1972), demonstrated that the defendant's due process rights outweighed the state's interest in proceeding in his absence. See *State* v. *Durkin,* 23 Conn. App. 642, 651-52, 583 A.2d 1303 (1990). Like courts in other jurisdictions; see *State* v. *Hudson,* 119 N.J. 165, 183-84, 574 A.2d 434 (1990); we previously have declined an invitation to adopt the *Tortora* test in this state. See *State* v. *Drakeford,* 202 Conn. 75, 80, 519 A.2d 1194 (1987). The defendant has offered no persuasive reason why the test should be embraced now.