### STATE OF CONNECTICUT *v.* LARRY A. GASTON
### (AC 17902)

Schaller, Spear and Spallone, Js.

Argued June 1—officially released December 21, 1999

*William B. Westcott*, special public defender, for the appellant (defendant).

*Michele C. Lukban*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's

attorney, and *Michael Gailor*, assistant state's attorney, for the appellee (state).

*Opinion*

SPALLONE, J. The defendant, Larry A. Gaston, appeals from the judgment of the trial court revoking his probation and ordering that he serve five years of a previously suspended ten year sentence. On appeal, the defendant claims that the trial court unfairly revoked his probation in violation of his right to due process. We affirm the judgment of the trial court.

The trial court reasonably could have found the following facts. On January 16, 1997, as part of a plea bargain, the defendant pleaded guilty to one count of possession of narcotics with intent to sell in violation of General Statutes § 21a-277. The trial court sentenced the defendant to ten years incarceration, execution suspended, and three years probation. The trial court imposed special conditions of probation.[1]

On February 14, 1997, the defendant met with a probation officer and reviewed and signed a document outlining the conditions of his probation. On February 17, 1997, having successfully completed the inpatient treatment component of his probation, the defendant was discharged from Blue Hills Center (Blue Hills). Then, on April 2, 1997, the defendant met with his assigned probation officer, Laurence Reynolds. During that meeting, the defendant again reviewed and signed a document outlining the conditions of his probation,

---

[1] The special conditions of probation provided that (1) "zero tolerance" apply, (2) the defendant enter and successfully complete an inpatient drug treatment program at Blue Hills Center with aftercare and halfway house treatment or electronic monitoring, (3) the defendant not possess any narcotics or weapons, (4) the defendant be subject to random searches of self, house or car, (5) the defendant provide random urine samples upon request, (6) the defendant attempt to obtain gainful employment, (7) the defendant, in the absence of gainful employment, perform twenty-five hours of community service per week with a maximum of 1250 hours and (8) the defendant abide by any curfew set by the office of adult probation.

acknowledging that he understood those conditions. The defendant also revealed to Reynolds that since his discharge from Blue Hills, he had used cocaine and had also been arrested and charged with public intoxication. In light of this information, Reynolds referred the defendant to a halfway house and the Project Green program in connection with the aftercare requirements of his probation. Reynolds brought the defendant to Project Green for an intake evaluation and the defendant was accepted into the program that same day, April 2, 1997.

The defendant was reluctant to enter Project Green and requested to delay his admission for two days in order to resolve some personal matters. Reynolds agreed to allow the defendant to enter the program on April 4, 1997. The defendant failed to report to Project Green on April 4, 1997, but telephoned Reynolds and requested that his admission be delayed until Monday, April 7, 1997. While Reynolds denied the request, the defendant still failed to report for admission to Project Green. On April 7, 1997, the defendant failed to report. Late in the day on April 8, 1997, the defendant telephoned Reynolds and informed him that he did not report to Project Green the previous day because he was washing his clothing. The defendant again contacted Reynolds a second time and told him that he had contacted Project Green and had arranged for admission on Wednesday, April 9. On Wednesday, the defendant, however, again failed to report to Project Green. The defendant contacted Reynolds on April 9, and Reynolds told him that failure to report to Project Green would result in the issuance of an arrest warrant for violation of probation. The defendant presented himself at and was admitted to Project Green later that day, although he arrived one-half hour later than required.

Upon admission to Project Green on April 9, 1997, the defendant reviewed and signed a copy of Project Green's rules and agreed to follow them. The defendant

also informed his case manager that he had consumed alcohol that morning and had used cocaine the previous Sunday. A subsequent urinalysis was positive for cocaine and marijuana. The same sample yielded a positive result for cocaine when tested by an outside laboratory. A breathalyzer test was negative.

On April 11, 1997, Project Green informed Reynolds that it was terminating the defendant for his (1) failure to comply with program rules, (2) refusal to complete intake paperwork and the community service component of treatment and (3) abusive and uncooperative behavior. On April 15, 1997, following Reynolds' decision to obtain a warrant, the defendant was arrested and removed from Project Green for violating his probation.

Following a hearing on September 9 and 10, 1997, the trial court concluded that the state had established, beyond the requisite preponderance of the evidence, that the defendant had violated the terms of his probation. Indeed, the court stated that the defendant's violation was established "beyond a clear and convincing standard." In reaching its decision, the trial court pointed to the following violations of probation by the defendant: (1) testing positive for cocaine and marijuana use; (2) failing to comply with the special conditions of probation by not reporting to Project Green on April 2, 4, 8 and 9, 1997; (3) lying as to his inability to perform the community service component of his treatment due to injury; (4) being uncooperative and abusive with Project Green staff; and (5) lying as to why he could not report to Project Green when initially requested to do so. The trial court also stated that the defendant was no longer receiving the benefits of probation.

Additionally, during a disposition hearing on November 5, 1997, the trial court noted that the defendant had participated in several different treatment programs

during the past ten years and that since 1991 he had been unsuccessfully discharged from three such programs. The court also noted that the defendant already had been on probation when he was convicted of the underlying crime here, and he had a previous violation of probation in 1986.

The trial court, having determined that the defendant violated his current probation, revoked his probation and ordered the defendant to serve five years of the previously suspended ten year sentence. This appeal followed.

The defendant claims that the trial court improperly (1) determined that he violated the terms of his probation and (2) revoked his probation in violation of his right to due process. Specifically, the defendant claims that the trial court's determination that he violated the terms of his probation violated his right to due process because he received deficient supervision. We disagree.

I

Initially, we determine whether the trial court improperly found that the defendant had violated the terms of his probation and whether it abused its discretion in revoking the defendant's probation. "[U]nder § 53a-32, a probation revocation hearing has two distinct components. . . . The trial court must first conduct an adversarial evidentiary hearing to determine whether the defendant has in fact violated a condition of probation. . . . If the trial court determines that the evidence has established a violation of a condition of probation, then it proceeds to the second component of probation revocation, the determination of whether the defendant's probationary status should be revoked. On the basis of its consideration of the whole record, the trial court may continue or revoke the sentence of probation . . . or . . . require the defendant to serve the sentence imposed or impose any lesser sentence.

. . . In making this second determination, the trial court is vested with broad discretion. . . .

"To support a finding of probation violation, the evidence must induce a reasonable belief that it is more probable than not that the defendant has violated a condition of his or her probation. . . . In making its factual determination, the trial court is entitled to draw reasonable and logical inferences from the evidence. . . . This court may reverse the trial court's initial factual determination that a condition of probation has been violated only if we determine that such a finding was clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling . . . . A fact is more probable than not when it is supported by a fair preponderance of the evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Welch*, 40 Conn. App. 395, 400–401, 671 A.2d 379, cert. denied, 236 Conn. 918, 673 A.2d 1145 (1996). Additionally, in conducting our review pursuant to the clearly erroneous standard, "[w]e cannot retry the facts or pass on the credibility of the witnesses." (Internal quotation marks omitted.) *In re Jessica S.*, 51 Conn. App. 667, 674, 723 A.2d 356, cert. denied, 251 Conn. 901, 738 A.2d 1090 (1999).

Our examination of the record, transcript and briefs, with due regard to arguments of counsel, fails to indicate any improper action on the part of the trial court. The facts previously set forth in this opinion reveal ample evidence to support a finding that the defendant violated his probation. The trial court, therefore, did not abuse its discretion in revoking the defendant's probation.

## II

We next turn to the defendant's claim that the revocation of his probation was in violation of his right to due process because his probation had been administered in an unfair manner. The defendant claims that his probation officer's inadequate supervision should excuse the behavior that was held to have violated the conditions of his probation. He claims that because he was left unsupervised for a six week period after his release from Blue Hills until he was required to meet with his probation officer, he should not be held responsible for his actions. This claim is also without merit.

The defendant relies on the United States Supreme Court decision in *Black* v. *Romano*, 471 U.S. 606, 612, 105 S. Ct. 2254, 85 L. Ed. 2d 636 (1985), which held that a "probationer is entitled to an opportunity to show not only that he did not violate the conditions, but also that there was a justifiable excuse for any violation or that revocation is not the appropriate disposition."

The due process clause of the United States constitution provides in relevant part: "[N]or shall any State deprive any person of life, liberty or property, without due process of law . . . ." U.S. Const., amend. XIV, § 1. Due process "requires that certain minimum procedural safeguards be observed in the process of *revoking* the conditional liberty created by *probation. Black* v. *Romano*, [supra, 471 U.S. 610]; see *Morrissey* v. *Brewer*, 408 U.S. 471, 489, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972). *State* v. *Durkin*, 219 Conn. 629, 635, 595 A.2d 826 (1991). This is so because the loss of liberty entailed is a serious deprivation requiring that the [probationer] be accorded due process. *Gagnon* v. *Scarpelli*, 411 U.S. 778, 781, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973). Among other things, due process entitles a probationer to a final revocation hearing under the conditions set forth in *Morrissey* v. *Brewer*, supra [489] . . . see *Gagnon* v. *Scarpelli*,

[supra, 782]; see also *State* v. *Roberson*, [165 Conn. 73, 81–82, 327 A.2d 556 (1973)]; *State* v. *Crawford*, 38 Conn. Sup. 472, 474–75, 451 A.2d 583 (1982); see generally General Statutes § 53a-32 (a). *State* v. *Durkin*, supra, 635." (Emphasis added; internal quotation marks omitted.) *State* v. *Davis*, 229 Conn. 285, 294–95, 641 A.2d 370 (1994).

In the present case, a probation revocation hearing was held prior to the trial court's determining that the defendant violated the terms of his probation and that his probation should be revoked. Our review of the record and transcript reveals that the trial court considered the whole record in reaching its decision. The defendant does not claim that he did not have an opportunity to present his defense that his probation violation was justified or that it should be excused because of his allegedly improper supervision. He claims instead that his probation should not have been revoked under the circumstances here. We therefore consider whether there was an abuse of discretion in revoking the defendant's probation. See *State* v. *Wright*, 24 Conn. App. 575, 579, 590 A.2d 486 (1991) (appellate courts review revocation of probation under abuse of discretion standard).

This court recently considered an analogous claim that a defendant's probation should not have been revoked because his probation officer failed to satisfy the requirement of General Statutes § 54-108[2] that he present the defendant a written statement of the terms and conditions of probation. *State* v. *Martinez*, 55 Conn.

---

[2] General Statutes § 54-108 provides in relevant part: "Probation officers shall investigate all cases referred to them for investigation by the director or by the court. They shall furnish to each person released under their supervision a written statement of the conditions of probation and shall instruct him regarding the same. They shall keep informed of his conduct and condition and use all suitable methods to aid and encourage him and to bring about improvement in his conduct and condition. . . ."

App. 622, 739 A.2d 721 (1999). In *Martinez*, we concluded that "as long as the probation officer advised the defendant of the conditions of his probation and the consequences of violating those conditions, the probation officer complied with the requirements of § 54-108." Id., 627.

In this case, the defendant met with his probation officer on February 14, 1997, prior to his release from Blue Hills. He not only reviewed the conditions of probation, but signed a statement of those conditions. The defendant concedes in his brief that he "was seen on February 14, 1997, while he was still enrolled in the inpatient program by a probation officer and advised of the conditions of his probation." There is no question in this case that the defendant's probation officer complied with the mandates of § 54-108, which does not require the officer to supervise the defendant to a degree where the defendant is protected from himself. The defendant's argument misstates the function of a probation officer and is contrary to the goals of probation. "Absent a showing to the contrary, a probationer is chargeable with knowledge that a breach of any condition may well result in revocation and serving the suspended sentence." *State* v. *Smith*, 207 Conn. 152, 172, 540 A.2d 679 (1988); see *State* v. *Martinez*, supra, 55 Conn. App. 628. We conclude that, under the circumstances of this case, the trial court did not abuse its discretion in refusing to excuse the defendant from his probation violation.

The judgment is affirmed.

In this opinion the other judges concurred.