STATE OF CONNECTICUT *v.* RONDELL CHAMBERS
(AC 19853)

Foti, Dranginis and Dupont, Js.

Argued November 27, 2000—officially released February 13, 2001

*Carlos E. Candal*, for the appellant (defendant).

*Robin S. Schwartz*, special deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Dennis J. O'Connor*, senior assistant state's attorney, for the appellee (state).

*Opinion*

DUPONT, J. The defendant, Rondell Chambers, appeals from the judgment of the trial court revoking his probation and committing him to the custody of the commissioner of correction (commissioner) for a period of ten years. The defendant claims that (1) the state produced insufficient evidence to support a finding that he violated his probation and (2) the court abused its discretion by imposing the maximum sentence of ten years. We affirm the judgment of the trial court.

The following facts are relevant to our discussion of the issues. On November 8, 1995, the defendant pleaded guilty to assault in the first degree in violation of General Statutes § 53a-59. On November 22, 1995, the court sentenced the defendant to ten years imprisonment, execution suspended, and three years probation. On June 19, 1998, the police arrested the defendant for violating the terms of his probation. An alleged kidnapping and sexual assault that took place on January 10, 1998, led to the defendant's June 19, 1998 arrest. The state charged the defendant with violating the terms of his probation, namely, that he not violate the laws of the state of Connecticut.

At the defendant's violation of probation hearing, the alleged victim, K,[1] testified as to the events that occurred on January 10, 1998. At approximately 7:20 p.m., K was walking on Albany Avenue in Hartford to pick up dinner for herself and her mother as she passed the defendant at a pay telephone. She recognized the defendant from the neighborhood, specifically, from a local club where he had attempted to dance with her the previous night. The defendant initiated a conversation with K and offered to drive her to the restaurant. K agreed and entered the passenger side of the defendant's car. She testified that the defendant then drove several blocks in the opposite direction of the restaurant before stopping in a residential area on Hebron Street.

K testified that the defendant then made unwelcome advances and started rubbing her legs. K testified that she told him to stop, but that the defendant did not. He then reclined her seat. K testified that she told him to stop, but that the defendant continued. He then began pulling up her dress, and she told him to stop. The defendant did not. He then climbed on top of her and told her that she would be his "bitch." K testified that she told the defendant to get off of her. Still, the defendant did not relent.

While on top of K, the defendant asked her if she had stabbed his friend, Adrian Young. K testified that she told the defendant that she had stabbed Young. The defendant then pulled her panties to the side and penetrated her with his penis. According to K's testimony, the assault lasted around ten minutes, during which she cried, repeatedly insisted that he get off of

---

[1] General Statutes § 54-86e provides in relevant part: "The name and address of the victim of a sexual assault . . . shall be confidential and shall be disclosed only upon order of the Superior Court, except that such information shall be available to the accused in the same manner and time as such information is available to persons accused of other criminal offenses."

her, moved her head from side to side, tried to pull him off her and even told him that she had AIDS, hoping that that proclamation would make him stop. The cries, the pleas and the threat of HIV infection did not deter the defendant. K's efforts to push him off of her also proved unsuccessful given the defendant's superior physical size and strength. According to K's testimony, the defendant continued the sexual assault.

K testified further that the defendant eventually stopped after some ten minutes and then ordered her into the backseat to retrieve a pair of clean boxer shorts. She did as he demanded, and he threw his soiled boxers in her face, telling her to keep them as a souvenir. She threw the boxers back at him and fixed her clothing. The defendant then drove back to the restaurant where K had been heading and dropped her off. K purchased dinner and returned home. Upon her return, she did not eat and climbed into the bathtub and cried. K's mother tried to coax her out of the bathroom and eventually summoned the police. Two uniformed officers arrived at the house, and K informed them of the assault. They then asked her for the dress that she had worn and transported her to the hospital for medical attention. K gave a statement to the police that was consistent with her testimony at the violation of probation hearing.

The defendant also testified at the hearing. He testified that K initiated the conversation on Albany Avenue and consented to the sexual intercourse while in the car. He testified that he too had recognized K from the neighborhood as she walked past him at the telephone booth, but denied pursuing her at the club the night before. Additionally, he testified that K approached him on January 10, 1998, and asked where he was going. The defendant responded that he was going to his cousin's house, and K said that she was getting dinner. The defendant testified that K entered his car before he even had an opportunity to offer her a ride and that

they drove to his cousin's house. According to the defendant, he visited with his cousin for approximately five minutes, leaving K alone in the car. He told her to help herself to a beer while she waited. The defendant testified that she was drinking a beer when he returned. He entered the car and began driving around. The defendant testified that K began rubbing his legs, reclined her seat and grabbed his penis several times as he drove. The defendant then pulled the car over on Hebron Street. She continued touching and kissing him, and he reciprocated. According to the defendant's testimony, he and K engaged in consensual sex, during which K never asked him to stop.

The defendant testified that he asked K to retrieve a pair of clean boxers from a bag in the backseat after the sexual encounter. K did so and commented on the nice clothes in the backseat. The defendant then told her that he was going out that night to celebrate his birthday. The defendant testified that K then asked him for money so that she could buy him a birthday gift, to which he responded that he should be receiving gifts because it was his birthday. The defendant then told K that instead of giving her money, he would give her the boxers. He threw them at her, and she playfully tossed them back at him.

The defendant testified that as he dressed, the two of them discussed their respective plans for the evening. He mentioned that he would be going out with a few friends, one of whom was Adrian Young. At that point, according to the defendant, K grew angry and began cursing. She told him that she had stabbed Young because she hated her. The defendant testified that he told K to "chill" and dropped her off at the restaurant. According to his testimony, she waved as he pulled away. The defendant testified further that when he saw K one week later, she smiled, stuck her tongue out at him and did not act hostilely toward him. At the hearing,

the defendant denied that he told K she would be his bitch and denied that she cried or asked him to stop during the intercourse.

On June 9, 1999, the court found by a fair preponderance of the evidence that the defendant had violated the terms of his probation by sexually assaulting K. The court then determined that the defendant's probation no longer served its rehabilitative purposes, revoked it and committed the defendant to the custody of the commissioner for a period of ten years. This appeal followed.

Before we address the defendant's claims, we note our well settled standard of review in probation revocation cases. "The hearing itself involves two distinct components. Initially, the court conducts an adversarial evidentiary hearing to determine whether the defendant has indeed violated a condition of probation. *State* v. *Davis*, 229 Conn. 285, 289, 641 A.2d 370 (1994); *State* v. *Gaston*, 56 Conn. App. 125, 129, 741 A.2d 344 (1999). The state must establish a violation of probation by a fair preponderance of the evidence. *State* v. *Davis*, supra, 295. That is to say, 'the evidence must induce a reasonable belief that it is more probable than not that the defendant has violated a condition of his or her probation.' Id., 302. This court will not disturb a trial court's factual determination that a violation has occurred unless that determination is clearly erroneous. *State* v. *Treat*, 38 Conn. App. 762, 769, 664 A.2d 785, cert. denied, 235 Conn. 920, 665 A.2d 907 (1995); *State* v. *Scott*, 31 Conn. App. 660, 668, 626 A.2d 817 (1993).

"Second, if the evidence supports a violation, the court exercises its discretion and determines whether the beneficial, rehabilitative purposes of probation are still being served or whether the need to protect the public outweighs the probationer's interest in liberty. *State* v. *Davis*, supra, 229 Conn. 297. Thus, an appellate

court will affirm an exercise of discretion reinstating an original sentence or ordering incarceration, absent a manifest abuse of discretion or injustice requiring reversal. *Walker* v. *Commissioner of Correction*, 223 Conn. 411, 414–15, 611 A.2d 413 (1992), overruled in part on other grounds, *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994)." *State* v. *Reilly*, 60 Conn. App. 716, 725–26, 760 A.2d 1001 (2000).

I

The defendant first claims that the evidence as to lack of consent was insufficient to support a finding by a preponderance of the evidence that he violated his probation on the basis of a sexual assault allegation. He argues that a reasonable person would have believed that K had consented. The state argues that the court based its finding on reliable and probative evidence, and that the court's factual findings are not clearly erroneous. We agree with the state.

The following additional facts are relevant to our discussion of the defendant's first claim. At the violation of probation hearing, the defendant and K both testified that K entered the defendant's car, that he drove to Hebron Street and that a sexual encounter occurred. The principal difference, of course, centered around whether K consented to having intercourse with the defendant.

The defendant argues in his brief that even if one fully credits K's testimony, "it was still unclear whether . . . a reasonable person in [the defendant's] position would have believed that [K] had consented to having sex with [the defendant]." The defendant draws our attention to the fact that K agreed to accompany him in the car. The defendant also points to what K did not do. She did not tell anyone in the restaurant of the rape. She did not yell or scream. She did not attempt to open the passenger door. She did not run away or call the

police immediately after she left his car. The defendant also makes much of the fact that she remained in the four door car when the defendant had his pants and boxers around his ankles as she retrieved a clean pair of boxers from the backseat.

We respond briefly to the defendant's assertions. First, K testified as follows: "I was crying and I told him no, to get off of me and I tried to push him off of me. He wouldn't get up, and I was crying and saying no, no, no get off of me, get off me, and I said I had AIDS and get off of me, you don't even know me." The court credited K's testimony. We disagree, therefore, with the defendant's proposition that K's protests would have left a reasonable person confused as to whether she had consented. Second, voluntary acceptance of an invitation for a car ride in no way implies voluntary acceptance of an invitation for sex. Third, we refuse to credit the defendant's rendition of events simply because K failed to inform a complete stranger in a restaurant of the rape, because she pleaded with the defendant to stop rather than scream for help, because she did not exit the locked car in a fearful state in an unfamiliar neighborhood after dark in the middle of winter or because she initially was reluctant to involve the police.

The court specifically stated that it found K both credible and believable, and the defendant noncredible. Moreover, the court stated that "[t]here is little in the record to warrant a finding of consen[t]. . . . [T]he reasonable inferences that can be drawn by the trier negate any finding of consen[t]."

We are unable to conclude that the court's factual findings as to consent were clearly erroneous. The defendant must do more than state that he and K recounted differing stories or that doubt surrounded K's credibility, as well as his own. Conflicting testimony

and credibility determinations are better left to the trier, who, in this case, resolved those conflicts in favor of K. "The determination of a witness' credibility is the special function of the trial court. This court cannot sift and weigh evidence." (Internal quotation marks omitted.) *State* v. *Trine*, 236 Conn. 216, 227, 673 A.2d 1098 (1996).

Simply stated, K testified that the defendant had raped her, and the court credited that testimony while it discredited the defendant's testimony. The medical records that the state introduced corroborated K's testimony as to the scratches on her leg and conflicted with the defendant's testimony that he had not been rough. Moreover, the court determined that K's "accusations immediately after the assault to her sister, mother and the police were constant and consistent." See *State* v. *Troupe*, 237 Conn. 284, 297, 677 A.2d 917 (1996) (en banc) (recognizing legitimacy of constancy of accusation doctrine). In sum, the court's factual findings are not clearly erroneous, and its legal conclusions find support in the record. We, therefore, conclude that the court properly determined that the defendant violated the terms of his probation.

## II

The defendant's second claim is that the court abused its discretion in imposing the maximum sentence of ten years incarceration. We disagree.

The defendant argues that the court abused its discretion for several reasons. He claims that no aggravating factors existed, that his actions were, even crediting K's account, not malicious, but, rather, a result of poor communication between himself and K, and that the state had nolled the underlying sexual assault charge and several other criminal allegations. The state counters that the court did not exceed its discretion in imposing a sentence that was within statutory limits, even

though that sentence was the maximum one. We agree with the state.

We reiterate the substantial deference we accord the trial court during the dispositional phase of the probation revocation process. *State* v. *Smith*, 207 Conn. 152, 167, 540 A.2d 679 (1988) ("defendant who seeks to reverse the exercise of judicial discretion assumes a heavy burden"). An abuse of discretion requires more than a harsh or severe sentence. See *State* v. *Horton*, 132 Conn. 276, 278, 43 A.2d 744 (1945). Reversal by this court would require the defendant to demonstrate that the court relied on information outside of the record that was materially false or unreliable. See *State* v. *Collette*, 199 Conn. 308, 320–21, 507 A.2d 99 (1986). It is here that the defendant's claim must fail.

The defendant speculates that the state opted not to pursue the underlying charges because of perceived weaknesses in its case. It is of little moment whether infirmities in the case prompted the state to reduce or nolle the underlying charges against the defendant.[2] Indeed, a judgment of acquittal on the underlying charges would similarly have limited effect on our review of a court's determination to revoke a defendant's probation because that probation no longer served its rehabilitative purposes. Such is the case because of the different standards of proof required in a criminal proceeding and a violation of probation hearing. "The proof of the conduct at the [violation of probation] hearing need not be sufficient to sustain a violation of a criminal law. . . . In a probation violation proceeding, all that is required is enough to satisfy the court within its sound judicial discretion that the

---

[2] We do not necessarily agree with the defendant's suggestion that if the state opts not to prosecute a defendant, then it is logical to assume that the state based that decision solely on weaknesses in the case. Such a narrow view wholly ignores other valid considerations such as case backlog, resources and time.

probationer has not met the terms of his probation." (Citations omitted; internal quotation marks omitted.) *State* v. *Rollins*, 51 Conn. App. 478, 484, 723 A.2d 817 (1999). If conviction of a lesser charge or an acquittal rarely has a bearing on our review of whether a court abused its discretion in revoking probation, we see no reason to allow a dismissal of the underlying charges to affect our review.

A review of the record reveals no impropriety on the part of the court. It properly considered the severity of the alleged sexual assault; see *State* v. *Huey*, 1 Conn. App. 724, 734–35, 476 A.2d 613 (1984), aff'd, 199 Conn. 121, 505 A.2d 1242 (1986); and the defendant's extensive criminal history. See id. The court stated that, given its experience, it has "had the opportunity to view and consider many rap sheet arrests and conviction records. I need to say for a defendant of his tender years, age twenty-six, to have reached a point of thirty-seven total arrests, fourteen convictions, five felonies, several of them involving either arrests or convictions with firearms, and a clear pattern of drug abuse both in use and sale, this case could almost be a poster child for a criminal justice system that is presently gridlocked and incapable of prosecuting defendants at the earliest stage of their criminal careers." The court did not abuse its discretion in sentencing the defendant to serve the maximum sentence.

The judgment is affirmed.

In this opinion the other judges concurred.