## STATE OF CONNECTICUT *v.* JOHN GAUTHIER
### (AC 21934)

Flynn, Bishop and West, Js.

---

[9] In this appeal, however, the respondent asserts that the claim was not raised on direct appeal.

Argued September 9—officially released December 3, 2002

*Deborah G. Stevenson*, special public defender, for the appellant (defendant).

*John A. East III*, senior assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's

attorney, and *Thomas R. Garcia,* assistant state's attorney, for the appellee (state).

*Opinion*

WEST, J. The defendant, John Gauthier, appeals from the judgments of the trial court revoking his probation and imposing a ten year term of incarceration. The defendant claims that (1) the evidence was insufficient to support a finding that he had violated the conditions of his probation, (2) the court improperly combined the criminal trial and the revocation of probation hearing into a single proceeding, (3) the court evinced bias during the dispositional phase of the hearing in such a manner as to violate his constitutional right to an allocution in his defense, (4) the court's consideration of the violation of probation charge following his acquittal violated the constitutional prohibition against double jeopardy and was precluded by the principle of collateral estoppel.[1] We affirm the judgments of the trial court.

The court reasonably could have found the following facts. On December 5, 1997, the defendant was convicted, following a jury trial, of one count each of arson in the third degree in violation of General Statutes § 53a-113 (a), conspiracy to commit arson in the third degree in violation of General Statutes §§ 53a-48 and 53a-113 (a), arson in the first degree in violation of General Statutes § 53a-111 (a) (1) and conspiracy to commit arson in the first degree in violation of General Statutes §§ 53a-48 and 53a-111 (a) (1). The defendant was sentenced to a total effective term of fifteen years incarceration, execution suspended after two years, with five years of probation. On September 30, 1998, the defen-

---

[1] There is substantial overlap between the issues presented within the various sections of the defendant's brief. We have taken the liberty of organizing the claims raised by the defendant in his brief in a more discrete manner and address them accordingly.

dant was released from the custody of the department of correction and began his term of probation.

On August 6, 1999, the defendant was drinking with several friends at the 4-Play bar in Newington. Among the individuals with whom the defendant was socializing were Denise London, Chris Drwiega, David Romeiko and Romeiko's girlfriend, Meghan Dicioccio. Wojciech Budrewicz also was patronizing the bar that evening. Budrewicz approached the defendant's group and the parties fell into a dispute, which resulted in a short-lived but vigorous brawl during which Budrewicz got the better of Romeiko.

The defendant and Romeiko decided to go to Budrewicz's home to seek revenge for Romeiko's beating during the bar fight. The defendant's group, traveling in several cars, stopped at a Shell gasoline station, where either Romeiko or the defendant purchased two glass bottles of juice. After emptying the original contents of those bottles, the defendant filled them with gasoline. The group then proceeded to Budrewicz's house. Romeiko and the defendant then each threw one of the lighted gasoline filled bottles at Budrewicz's home, in which Budrewicz, his sister and their parents were sleeping. Although all four of the occupants managed to escape the resulting inferno, the house was consumed within minutes.

On August 7, 1999, the defendant was arrested and charged with arson in the first degree in violation of § 53a-111 (a) (1), attempt to commit murder in violation of General Statutes §§ 53a-49 (a) (2) and 53a-54a, conspiracy to commit arson in the first degree in violation of §§ 53a-48 (a) and 53a-111 (a) (1), and illegal bomb manufacturing in violation of General Statutes § 53-80a. On September 20, 1999, the defendant was charged separately with violations of probation pursuant to General Statutes § 53a-32. The criminal charges and the

violation of probation charges all arose from the same underlying activity.

From May 24, 2000, through June 7, 2000, the court conducted a combined trial and probation revocation hearing. The jury acquitted the defendant on all four of the criminal charges. On June 13, 2000, following the conclusion of the criminal trial, and in the absence of the jury, the court heard additional testimony and evidence regarding the alleged violations of probation.

On April 6, 2001, the court found that the defendant had violated the terms of his probation and sentenced him to a total effective sentence of ten years with probation for four years. This appeal followed.

I

We first address the defendant's claim that the evidence was insufficient to support the finding that he had violated the terms and conditions of his parole.

"To support a finding of probation violation, the evidence must induce a reasonable belief that it is more probable than not that the defendant has violated a condition of his or her probation. . . . In making its factual determination, the trial court is entitled to draw reasonable and logical inferences from the evidence. . . . This court may reverse the trial court's initial factual determination that condition of probation has been violated only if we determine that such a finding was clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling . . . ." (Internal quotation marks omitted.) *State* v. *Jones*, 55 Conn. App. 243, 247, 739

A.2d 697 (1999), cert. denied, 253 Conn. 922, 754 A.2d 798 (2000).

The record shows that sufficient evidence was presented to support the court's finding. The court, in its capacity as the trier of fact for the purpose of the violation of probation hearing, was not bound by the factual findings of the jury in the criminal case. The judge was entitled to weigh independently the credibility of the witnesses who testified and to come to a different conclusion regarding their credibility from that of the jury. Dicioccio testified that she saw the defendant and Romeiko each walk out of the Shell station carrying a Snapple bottle. Drwiega testified that he saw a Snapple bottle in the defendant's hand at the Shell station. Dicioccio testified that she saw the defendant and Romeiko dump the contents of the bottles out and that she saw the defendant refill those bottles with gasoline. Both Dicioccio and Drwiega testified that they saw the defendant tearing up a sheet that was in the trunk of his car while at the Shell station.[2] The testimony indicated that the defendant not only drove his car to Budrewicz's house voluntarily, but that he also threatened Dicioccio to obtain directions. Dicioccio further testified that she observed the defendant and Romeiko each throw one of the lighted bottles at Budrewicz's house. Drwiega testified that in the immediate aftermath of the firebombing, the defendant exclaimed, "Molotov cocktail. We took care of it."[3] In the statement that he gave to the police following his arrest, the defendant could not completely deny his culpability for the arson. In that statement, the defendant claimed that due to the vast

[2] The relevance of that testimony relied on the clear implication that the ribbons of sheet supplied the wicks for the incendiary devices.

[3] A "Molotov cocktail" is defined as "a crude bomb made of a bottle filled with a flammable liquid (as gasoline) and usually fitted with a wick (as a saturated rag) that is ignited just before the bottle is hurled." Merriam-Webster's Collegiate Dictionary (10th Ed. 1999). The device is named after Vyacheslav Mikhaylovich Molotov (1890-1986), a Soviet statesman.

quantity of alcohol that he had consumed during the evening in question, he could not recall who threw the second bottle. He conceded, however, that it may have been him.

The defendant challenges the reliability of Drweiga and Dicioccio's testimony. Specifically, he argues that the credibility of their testimony is suspect because it conflicts with other testimony presented during the proceedings. The defendant also claims that any reliance on Dicioccio's testimony was improper because her credibility as an eyewitness was suspect given the conditions under which she claimed to have witnessed the defendant throw the incendiary device at Budrewicz's house[4] and the fact that she had been charged with perjury in the criminal trial against Romeiko.

"[E]vidence is not insufficient . . . because it is conflicting or inconsistent. [The fact finder] is free to juxtapose conflicting versions of events and determine which is more credible. . . . It is the [fact finder's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses. . . . The [fact finder] can . . . decide what—all, none, or some—of a witness' testimony to accept or reject." (Internal quotation marks omitted.) *State* v. *Colon*, 71 Conn. App. 217, 224–25, 800 A.2d 1268, cert. denied, 261 Conn. 934, 806 A.2d 1067 (2002).

The court was well aware of the factors raised by the defendant that would diminish the credibility of the witnesses. As the sole finder of fact in the probation revocation proceeding, however, the court was entitled to arrive at its own conclusion regarding the witnesses' credibility and what weight to afford their testimony. The court concluded that the testimony of the witnesses

---

[4] Dicioccio stated that she witnessed the event in the rearview mirror of a car parked four houses away from Budrewicz's house. She also stated that there was an oak tree, a fence and a speed limit sign in her field of vision.

established that it was more probable than not that the defendant had violated the terms and conditions of his probation. Having reviewed the record, we conclude that that conclusion was not clearly erroneous.

## II

The defendant next claims that the court improperly combined the criminal trial and the revocation of probation hearing into a single proceeding. The defendant seeks review of his claim pursuant to either *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or the plain error doctrine.[5]

Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id. The defendant fails to satisfy the third prong of *Golding*, namely, that a constitutional violation clearly exists and clearly deprived him of a fair trial. Likewise, we conclude that the court did not commit plain error.

The defendant argues that he was prejudiced by the joinder of the criminal trial and the probation revocation hearing because each of the proceedings is governed by a different standard of proof. The essence of his claim is that by combining the criminal trial and the probation revocation hearing, the defendant was placed in the difficult position of having to mount a defense in

---

[5] Pursuant to Practice Book § 60-5, "[t]he court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

two dissimilar ways concurrently. The defendant claims that such a circumstance violates his due process rights under the United States constitution.[6]

"Probation revocation proceedings fall within the protections guaranteed by the due process clause of the fourteenth amendment to the federal constitution. . . . That clause provides in relevant part: '[N]or shall any State deprive any person of life, liberty or property, without due process of law . . . .' U.S. Const., amend. XIV, § 1. Probation itself is a conditional liberty and a privilege that, once granted, is a constitutionally protected interest. . . . The revocation proceeding must comport with the basic requirements of due process because termination of that privilege results in a loss of liberty." *State* v. *Faraday*, 69 Conn. App. 421, 424, 794 A.2d 1098, cert. granted on other grounds, 261 Conn. 915, 806 A.2d 1055 (2002). "[T]he minimum due process requirements for revocation of [probation] include written notice of the claimed [probation] violation, disclosure to the [probationer] of the evidence against him, the opportunity to be heard in person and to present witnesses and documentary evidence, the right to confront and cross-examine adverse witnesses in most instances, a neutral hearing body, and a written statement as to the evidence for and reasons for [probation] violation." *State* v. *Baxter*, 19 Conn. App, 304, 311, 563 A.2d 721 (1989). Despite that panoply of requirements, a probation revocation hearing does not require all of the procedural components associated with an adversarial criminal proceeding. *State* v. *Davis*, 229 Conn. 285, 295, 641 A.2d 370 (1994).

The fact that the jury acquitted the defendant on the criminal charges belies his contention that his defense

---

[6] Although the defendant also claims a violation of the constitution of Connecticut, he has not provided an independent analysis of his claim under our state constitution. We accordingly consider that claim abandoned. See *Ramos* v. *Vernon*, 254 Conn. 799, 815, 761 A.2d 705 (2000).

was compromised as a result of the combined proceeding. As for the claim that the procedural integrity of the probation hearing was flawed, the record indicates that the proceedings satisfied the requirements of due process. During the combined proceeding, the court scrupulously maintained a separation of its judicial role in the criminal trial and its fact-finding role in the probation hearing. The court also provided both parties with the opportunity to present additional witnesses and evidence following the close of the criminal trial. Presumably, that opportunity was provided precisely for the purpose of allowing the parties to present evidence that either was not relevant or was not appropriate for the jury's consideration in the criminal trial. Both parties took advantage of that opportunity and called additional witnesses.

We conclude that the defendant has failed to establish any violation of due process.

### III

The defendant also claims that the court was biased during the dispositional phase of the violation of probation hearing. The substance of his claim is that the court improperly restricted his constitutional right of allocution during sentencing. We disagree.

As presented in the defendant's brief, the claim of judicial bias is predicated on the conduct of the court regarding the defendant's allocution during sentencing. The defendant seeks review of his claim pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40. We note that appellate review of a claim of judicial bias in a probation revocation hearing is limited to the plain error doctrine. *State* v. *Strickland*, 42 Conn. App. 768, 776, 682 A.2d 521 (1996), rev'd on other grounds, 243 Conn. 339, 703 A.2d 109 (1997). "It is well settled that courts will not review a claim of judicial bias on appeal unless that claim was properly presented to the trial court through

a motion for disqualification . . . . Absent plain error, a claim of judicial bias cannot be reviewed on appeal unless preserved in the trial court. . . . To prevail under the plain error doctrine, the defendant must demonstrate that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice. . . . This doctrine is not implicated and review of the claimed error is not undertaken unless the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Citations omitted; internal quotation marks omitted.) *State* v. *McDuffie*, 51 Conn. App. 210, 216–17, 721 A.2d 142 (1998), cert. denied, 247 Conn. 958, 723 A.2d 814 (1999).

A defendant has the right to address the court at the time of sentencing in the dispositional phase of a probation revocation hearing. *State* v. *Strickland*, 243 Conn. 339, 703 A.2d 109 (1997).[7] The defendant asserts that the court did not provide him with a true opportunity for allocution because it allowed allocution only for the limited purpose of confession. The transcript of the dispositional phase of the hearing clearly indicates that the court provided the defendant with a full and fair opportunity to speak on his behalf.

Although it is clear that the court wanted the defendant to address the issue of his culpability, it did not restrict his allocution to that issue. On the contrary, the court invited the defendant to speak freely and openly. In response to defense counsel's request for an allocution, the court responded, "He can speak as long as he wants. I would like to hear from [the defendant]. Anything he wants to say, but particularly about the

---

[7] In *Strickland*, the court found that the defendant had violated the conditions of his probation and sentenced him to serve the remainder of his sentence. During the sentencing, the defendant twice asked to be heard on his behalf, but the court denied him any opportunity to speak. *State* v. *Strickland*, supra, 243 Conn. 342–43.

events on the night four sleeping people had their house burned to the ground." Thereupon, the defendant gave a statement concerning the salutary effect that the previous period of incarceration had had on him and his aspirations and plans for the future.

The defendant also claims that the court ended his allocution when it became apparent that he was not going to confess to the crimes of which he had been acquitted. The record, however, clearly indicates that the defendant said as much as he cared to during the allocution. The defendant spoke without any interruption from the court and ended his statement by formally thanking the court for its time.

Indeed, when the court, at the conclusion of the defendant's statement, inquired of him whether he wanted to speak more directly about his participation in the arson, it was the defendant's attorney who cautioned him about responding. Nevertheless, the defendant did make some additional brief remarks. On the basis of the record, we conclude that the defendant's right to an allocution was not infringed in any way by the court. To the contrary, the defendant took full advantage of the opportunity to speak that was provided to him by the court. After careful review of the record, we conclude that the court's conduct did not affect the fairness or integrity of the proceedings, nor did it result in manifest injustice to the defendant.

## IV

The final claim raised by the defendant is that the court improperly considered his violation of probation after he had been acquitted. The defendant argues that by considering the violation of probation charge following his acquittal on the criminal charges, the court violated his constitutional right to be free of double jeopardy. In the alternative, the defendant argues that the principle of collateral estoppel should have pre-

cluded the court from independently determining the issue of his liability for the charged conduct. We disagree with both of the defendant's contentions.

The defendant correctly cites *State* v. *Smith*, 207 Conn. 152, 176–77, 540 A.2d 679 (1988), for the proposition that the doctrine of double jeopardy is not applicable to probation revocation proceedings because, in a revocation proceeding, the defendant is not exposed to criminal prosecution for the same offense following conviction or acquittal. Nevertheless, the defendant argues that *this* revocation proceeding should be considered criminal for double jeopardy purposes because the sentence was imposed as punishment for the criminal activity of which the defendant had been acquitted, rather than for the prior crimes for which he previously had been convicted. That is the same argument that was rejected by our Supreme Court in *State* v. *McDowell*, 242 Conn. 648, 652, 699 A.2d 987 (1997). In *McDowell*, the court unequivocally recognized that any punishment involved in a revocation proceeding is "attributable to the crime for which [the defendant] was originally convicted and sentenced, rather than to the charges on which the violation of probation is based." (Internal quotation marks omitted.) Id., 653. The defendant has not offered any evidence to rebut that presumption. He does not argue, for instance, that the court increased his sentence beyond that to which he was exposed for violation of probation. The defendant's claim, based as it is on mere conjecture and assertion, must, therefore, fail.

The defendant also makes the argument that his acquittal of the criminal charges should have collaterally estopped the court from considering that same conduct for the purpose of finding a violation of the terms of his probation.[8] Such an argument is unavailing.

[8] The defendant also characterizes the court action as "judicial nullification" of the jury verdict. That argument, however, is wholly without merit because the court's judgment in the probation revocation proceeding had

In addressing the relevance of collateral estoppel principles in the context of the different purposes of the criminal justice and probation systems, our Supreme Court has recognized that those differing purposes should bar the application of collateral estoppel even if its formal prerequisites have been met. Id., 656. Moreover, we have consistently expressed the conviction that the outcome of a criminal proceeding simply has no relevance whatsoever to an independent determination on the same facts made in a revocation of probation hearing. *State* v. *Chambers*, 61 Conn. App. 781, 790–91, 767 A.2d 1215, cert. denied, 256 Conn. 903, 772 A.2d 597 (2001).

In a criminal trial, the state must prove its case beyond a reasonable doubt. In a probation revocation hearing, by contrast, a violation of probation need only be shown by a preponderance of the evidence. The differing standards of proof relevant to those proceedings militate against application of collateral estoppel. In this case, the most that can be said regarding the jury verdict is that the jury found that the alleged criminal conduct had not been proven beyond a reasonable doubt. The jury had no occasion to consider whether the charged conduct had been proven by a preponderance of the evidence, the standard of proof applicable to a probation revocation hearing. Thus, contrary to the defendant's argument, the factual issues had not been conclusively determined in a prior judicial proceeding for the purposes of the probation hearing.

The judgments are affirmed.

In this opinion the other judges concurred.

---

no effect whatsoever on the jury's acquittal of the defendant on the criminal charges.