STATE OF CONNECTICUT *v.* CURTIS WIDLAK
(AC 22325)

Foti, Mihalakos and Dranginis, Js.

Argued October 21—officially released December 31, 2002

*Tashun Bowden-Lewis*, deputy assistant public defender, with whom was *G. Douglas Nash*, public defender, for the appellant (defendant).

*Thomas M. DeLillo*, special deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Vicki Melchiorre*, senior assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Curtis Widlak, appeals from the judgment of the trial court revoking his probation. On appeal, the defendant claims that the judgment is improper because (1) the court improperly found that

he had violated the terms of his probation by committing the criminal conduct of interfering with an officer in violation of General Statutes § 53a-167a when such conduct occurred during a period of time when the terms of his probation were not in effect, (2) the evidence adduced at trial did not support the court's finding that he committed the criminal conduct of disorderly conduct in violation of General Statutes § 53a-182 and (3) the evidence adduced at trial did not support the court's finding that he failed to inform his probation officer of his whereabouts. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's appeal. On February 4, 1998, the defendant, after entering a guilty plea, was found guilty of one count of assault in the first degree in violation of General Statutes § 53a-59 (a) (3). The court sentenced the defendant to a term of nine years imprisonment, suspended after time served, with three years of probation.

In June, 1998, the defendant violated the terms of his probation by failing to report to his probation officer. On October 21, 1998, the defendant admitted that offense, and the court continued his probation. The defendant met with a probation officer on that same date and signed a form entitled "conditions of probation." The defendant, by virtue of signing the form, acknowledged that his probation officer had reviewed with him the conditions listed thereon and that he would abide by those conditions.

The defendant thereafter met with Patricia Maloney, the probation officer assigned to supervise him. As a condition of the defendant's probation, he was instructed to report to Maloney for a meeting on October 27, 1999. The defendant did not appear at that scheduled meeting and did not contact Maloney or her office

to explain his absence or to seek to be excused from the meeting.

On November 21, 1999, the defendant and his girlfriend, Donna Gawel, became involved in a loud and heated dispute in their apartment. The commotion drew the attention of several of the defendant's neighbors, who came out of their apartments and congregated near the defendant's apartment. The defendant eventually left the apartment, and Gawel called the police. Upon arriving at the scene, Christopher Williams, an officer with the New Britain police department, discovered Gawel, crying and upset. Minor swelling marked the left side of Gawel's face. Her hair was disheveled, and several loose strands of her hair were on her bathrobe. It appeared as if someone had pulled those strands of hair from her head. Despite declining to make a formal statement, Gawel asked Williams to arrest the defendant.

Shortly after Williams left the immediate scene, Gawel reported that the defendant had returned to the apartment. Williams apprehended and arrested the defendant while he was attempting to flee through one of the apartment building's rear doors. The defendant was charged with assault in the third degree in violation of General Statutes § 53a-61 and disorderly conduct in violation of § 53a-182.

The defendant was released on bond shortly after his arrest in the early morning of November 22, 1999. He failed to appear in court, however, for his arraignment later that day. The court issued a rearrest warrant and ordered that his bond be forfeited. Gawel thereafter spoke with Maloney. Maloney was unaware of the defendant's whereabouts, but Gawel informed her that the defendant no longer resided at his old address. On February 4, 2000, the court issued a warrant for the

defendant's arrest on the basis of his having violated the terms of his probation.

On June 28, 2000, the police attempted to serve the warrant at the defendant's new apartment where he resided with Gawel. When Gawel observed the police approaching the apartment, she yelled to the defendant to flee. Officers attempted to gain access to the defendant's apartment but, despite their banging on the door and announcing their purpose, Gawel did not let them enter. The officers gained access through a rear door. They searched the apartment several times and called to the defendant. Ultimately, they discovered the defendant, attempting to evade arrest by hiding under the cushions of a foldout sofa.

The arrest warrant application listed four separate violations of probation: (1) that the defendant failed to report as directed to his probation officer,[1] (2) that the defendant did not keep his probation officer apprised of where he was living, (3) that the defendant committed criminal conduct that constituted disorderly conduct and (4) that the defendant committed criminal conduct that constituted a wilful failure to appear to answer the charge of disorderly conduct[2] in violation of § 53a-182. On March 16, 2001, the state filed a notice of intent to rely on a fifth ground to establish a violation of probation, to wit, that the defendant committed criminal conduct that constituted interfering with an officer, in violation of § 53a-167a.

---

[1] It appears from the record, and the court noted, that the defendant conceded that the state had proved that ground. In any event, the evidence demonstrated that in October, 1998, the defendant failed to report to a scheduled meeting with his probation officer. The court continued his probation after he admitted his failure to report. The defendant failed, as well, to report to his October 27, 1999 meeting and, as the court found, that as of October 6, 1999, and for approximately ten months thereafter, the defendant failed to report to his probation officer at all. The defendant does not challenge those findings on appeal.

[2] The defendant does not challenge that finding on appeal.

After conducting an evidentiary hearing, the court found that the state had proven all five grounds alleged by a fair preponderance of the evidence and that the defendant, therefore, had violated the terms of his probation. The court thereafter, inter alia, sentenced the defendant to nine years imprisonment, suspended after five years and eighteen days served, followed by four years of probation. This appeal followed.

I

The defendant first claims that the court improperly found that he had violated his probation by committing criminal conduct by interfering with a police officer when such conduct occurred during a period of time when the terms of his probation were not in effect. He argues that his probationary term was not in effect on June 28, 2000, the date on which the state alleged that he committed the conduct. He also argues that his term of probation was "interrupted" by the "previous [February 4, 2000] issuance of the arrest warrant." The defendant posits that General Statutes § 53a-31 (b)[3] stops for all purposes, not merely for the purpose of the statute of limitations, the running of his probationary term. The defendant concludes, on that basis, that "the state cannot maintain that [he] breached a probation that no longer was running, but was interrupted," as to his alleged violation by interfering with an officer.

Although we find the defendant's argument interesting, we must conclude that this issue is not relevant to

___

[3] General Statutes § 53a-31 (b) provides: "Issuance of a warrant or notice to appear for violation pursuant to section 53a-32, shall interrupt the period of the sentence as of the date of such issuance until a final determination as to the violation has been made by the court. During the interrupted period, the court may impose any of the conditions of release set forth in section 54-64a. In the absence of a warrant or notice to appear for violation pursuant to section 53a-32, if the defendant has failed to comply with any of the conditions of probation or conditional discharge, such failure shall not relieve the Office of Adult Probation from the responsibility of supervising the defendant."

our determination as to whether the court properly revoked his probation. That is because the court's finding that the defendant committed the criminal conduct of interfering with an officer was not the sole basis for its conclusion that he violated the terms of his probation. As previously stated, that conduct was one of five grounds on which the court based its judgment.

"[T]o support a finding of probation violation, the evidence must induce a reasonable belief that it is more probable than not that the defendant has violated a condition of his or her probation." (Internal quotation marks omitted.) *State* v. *McElveen*, 69 Conn. App. 202, 205, 797 A.2d 534 (2002). Our law does not require the state to prove that all conditions alleged were violated; it is sufficient to prove that one was violated.

The defendant concedes that if evidence presented at the probation hearing is sufficient to support any single ground, it is sufficient to support a finding that he violated his probation.[4] He nonetheless argues that if the court improperly found that the state had proven even one of those grounds, it would not necessarily exercise its discretion on remand in the same way it did in the sentencing phase of the proceeding in deciding "whether to revoke probation and its subsequent decision on how much of the unexecuted portion of the prior sentence to impose."

The defendant challenges only three of the five grounds relied on by the state in seeking to revoke his probationary status; two of the grounds remain unchallenged in this appeal. The defendant cites no authority for his assertion that if the court improperly found that he committed criminal conduct by interfering with a police officer, such finding affected the sentence imposed. We decline to address that inadequately

---

[4] The defendant made that concession during oral argument before this court.

briefed claim, which is based on speculation as to how the court *might have sentenced the defendant* if it had not found that the state had proven each of the five violations alleged. See *State* v. *Holmes*, 70 Conn. App. 4, 5 n.2, 796 A.2d 561 (2002).

Accordingly, we decline to address the defendant's first claim because doing so would be academic under the circumstances of this case.

## II

The defendant next claims that the evidence adduced at trial did not support the court's finding that he committed the criminal conduct of disorderly conduct in violation of § 53a-182.[5] We disagree.

In a probation revocation proceeding, the state bears the burden of proving by a fair preponderance of the evidence that the defendant violated the terms of his probation. *State* v. *Daniels*, 248 Conn. 64, 74, 726 A.2d 520 (1999). This court may reverse the trial court's finding that a defendant violated the terms of his probation only if such finding is clearly erroneous. *State* v. *Samuel*, 57 Conn. App. 64, 68, 747 A.2d 21, cert. denied, 253 Conn. 909, 753 A.2d 942 (2000); *State* v. *Welch*, 40 Conn. App. 395, 401, 671 A.2d 379, cert. denied, 236 Conn. 918, 673 A.2d 1145 (1996). "A finding of fact is clearly erroneous when there is no evidence to support it . . . or . . . the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Internal quotation

---

[5] General Statutes § 53a-182 (a) provides in relevant part: "A person is guilty of disorderly conduct when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) Engages in fighting or in violent, tumultuous or threatening behavior; or (2) by offensive or disorderly conduct, annoys or interferes with another person; or (3) makes unreasonable noise . . . ."

marks omitted.) *State* v. *Rollins*, 51 Conn. App. 478, 482, 723 A.2d 817 (1999). This court defers to the trial court's discretion in matters of determining credibility and the weight to be given to a witness' testimony. See *Beede* v. *Beede*, 186 Conn. 191, 195, 440 A.2d 283 (1982); see also 2 B. Holden & J. Daly, Connecticut Evidence (2d Ed. 1988) § 125a. Furthermore, "[i]n making its factual determination, the trial court is entitled to draw reasonable and logical inferences from the evidence." (Internal quotation marks omitted.) *State* v. *Jones*, 55 Conn. App. 243, 247, 739 A.2d 697 (1999), cert. denied, 253 Conn. 922, 754 A.2d 798 (2000).

The defendant argues that the evidence presented as to whether he had committed disorderly conduct merely supported a finding that he and Gawel had engaged in a verbal argument. He claims primarily that the evidence was insufficient to prove criminal conduct because the state failed to prove that he possessed the criminal intent required for the commission of the crime. We do not agree.

To prove that a defendant possessed the requisite intent to violate § 53a-182, the state must prove that "the predominant intent [of the actor] is to cause what a reasonable person operating under contemporary community standards would consider a disturbance to or impediment of a lawful activity, a deep feeling of vexation or provocation, or a feeling of anxiety prompted by threatened danger or harm. In order to sustain a conviction for disorderly conduct, the state must begin by demonstrating that the defendant had such a state of mind." *State* v. *Indrisano*, 228 Conn. 795, 810–11, 640 A.2d 986 (1994).

As is often stated, "[i]ntent is generally proven by circumstantial evidence because direct evidence of the accused's state of mind is rarely available. . . . Therefore, intent is often inferred from conduct . . . and

from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom." (Internal quotation marks omitted.) *State* v. *Vasquez*, 68 Conn. App. 194, 207, 792 A.2d 856 (2002).

In the present case, the court heard Gawel's testimony concerning the incident. Gawel testified that on November 21, 1999, she and the defendant became engaged in an argument that was "very loud." She testified that she and the defendant were having a "very heated" dispute that involved "a lot of commotion" and that during the incident, many of her neighbors came out of their apartments. Gawel also testified that she went to a neighbor's apartment to call the police.

The court also heard Williams' testimony about the incident. Williams testified that when he arrived on the scene, Gawel was upset and crying. Williams testified that Gawel told him that the defendant had discovered her speaking on the telephone with a male acquaintance and became very upset. Gawel also told Williams that the defendant "grabbed her by the hair and slapped her in the face." Williams further testified that he observed swelling on Gawel's face and loose strands of hair on her bathrobe consistent with her allegations. Williams also testified that Gawel did not want to make a written statement, but that she wanted police to arrest the defendant.

From that evidence, the court reasonably and logically could infer that the defendant had engaged in an unreasonably loud argument with Gawel and engaged in physically abusive conduct in striking her in the face and pulling her hair.[6] That conduct also constitutes

[6] Apart from arguing that the state failed to demonstrate that he possessed the mental state necessary to violate General Statutes § 53a-182, the defendant also claims that the state failed to prove that he engaged in behavior that violated the statute. We disagree. From the aforementioned evidence before the court and the inferences reasonably drawn therefrom, the court reasonably could have found by a fair preponderance of the evidence, as it did, that the defendant engaged in fighting or in violent, tumultuous or

ample circumstantial evidence of the defendant's intent and supports the court's finding that he possessed the requisite intent to violate § 53a-182 (a).

The evidence permitted the court to find, by a fair preponderance of the evidence, that the defendant violated § 53a-182 (a); the court's findings were not clearly erroneous. We note, however, as we did in part I, that even if we were to have concluded otherwise on this claim, such decision would not have given us occasion to upset the court's judgment because it rests on a finding that he violated the terms of his probation in five distinct ways.

## III

Finally, the defendant claims that the evidence adduced at trial did not support the court's finding that he failed to inform his probation officer of his whereabouts. We disagree.

The evidence adduced at the hearing demonstrated that the defendant resided at a LaSalle Street address in New Britain on October 6, 1999, the time of his last meeting with Maloney. The defendant failed to report to his scheduled meeting with Maloney on October 27, 1999. In November or December, 1999, the defendant, along with Gawel, moved to a Davis Street address in New Britain. Maloney testified that prior to trial, October 6, 1999, was the last date on which she had any contact with the defendant. Maloney also testified that at the time that she presented the court with the applica-

---

threatening behavior; General Statutes § 53a-182 (a) (1); that by exhibiting offensive or disorderly conduct, he annoyed or interfered with another person; § 53a-182 (a) (2); and that he made unreasonable noise. General Statutes § 53a-182 (a) (3). The defendant's arguments to the contrary reflect a view of the evidence that was not shared by the finder of fact, the court. Further, we note that a finding that the defendant had violated even one of those subdivisions of the statute would have constituted a violation of the statute and, consequently, of his probation.

tion for an arrest warrant, she "had no information as to his current whereabouts."

We review the defendant's claim in the same manner that we reviewed his claim in part II. From the evidence presented at trial, the court reasonably could infer that the defendant did not notify the office of adult probation of his change of address. Further, there was evidence presented that the arrest warrant, once issued, could not be served for a four month period due to a lack of information by the probation office as to the defendant's address.

Accordingly, we conclude that the court's finding that the defendant failed to inform his probation officer of his whereabouts was not clearly erroneous.

## IV

The record amply supports the court's finding that the defendant violated the conditions of his probation requiring him not to violate any criminal law of this state, to keep his probation officer informed of his whereabouts and to give such officer immediate notice of any change of address. We again note that the defendant has not contested on appeal his having been found in violation of probation for not reporting to probation as directed or for his wilful failure to appear in court, which the court noted as a "repetition."

"In a probation violation proceeding, all that is required is enough to satisfy the court within its sound judicial discretion that the probationer has not met the terms of his probation." *Payne* v. *Robinson*, 10 Conn. App. 395, 403, 523 A.2d 917 (1987), aff'd, 207 Conn. 565, 541 A.2d 504, cert. denied, 488 U.S. 898, 109 S. Ct. 242, 102 L. Ed. 2d 230 (1988).

Once the court determined that the defendant had violated one or more of the conditions of his probation, terms which the defendant agreed to observe, it pro-

ceeded to the dispositional phase of the hearing, in which the court found that the beneficial purposes of the defendant's probation no longer were being served and that it should be revoked. The court could have sentenced the defendant to serve the full unexecuted portion of the sentence, but rather imposed a sentence of a little more than half of the defendant's unserved sentence. The court's considerations, in imposing sentence, as appear of record, were an appropriate exercise of judicial discretion. The defendant has failed to satisfy his heavy burden to prove any abuse of discretion by the court in imposing sentence, even if the court based such sentence on a violation of a single condition of his probation.

The judgment is affirmed.

In this opinion the other judges concurred.