STATE OF CONNECTICUT *v.* DON M. JOHNSON
(AC 22098)

Flynn, West and Hennessy, Js.

Argued November 19, 2002—officially released March 25, 2003

*Sharon Guy* and *Anthony Parent*, certified legal interns, with whom was *Martin Zeldis*, senior assistant public defender, for the appellant (defendant).

*Bruce R. Lockwood*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Eugene Calistro*, assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, J. The defendant, Don M. Johnson, appeals from the judgment of the trial court revoking his probation and imposing a three year term of incarceration. On appeal, the defendant claims that the court improp-

erly (1) determined that the office of adult probation had the authority, pursuant to General Statutes § 53a-30 (b), to include a curfew as a condition of his probation without a court hearing and a showing of good cause, (2) found that there was sufficient evidence to establish that he had violated his probation and (3) revoked his probation and ordered him to serve the entire three year suspended portion of his sentence.[1] Additionally, in his supplemental brief, the defendant also claims that he was entitled to refuse to sign the conditions of probation form without penalty and that the office of adult probation had no authority to eliminate the specific court-ordered condition of probation, i.e., that he possess no weapons.[2] We affirm the judgment of the

[1] The defendant frames the issues on appeal as follows: (1) "Whether this probation officer had the authority to extrajudicially impose additional conditions of probation?" (2) "Whether the [office of adult] probation had the authority to extrajudicially impose additional conditions of probation at the outset of the probationary period?" (3) "Whether a probation officer had the authority to impose truly additional conditions of probation when there is no nexus between the additional conditions and the underlying crime?" (4) "Whether the defendant's assertion at the outset of his probation that he could not comply with a condition of intensive probation—specifically, a 7 p.m. to 7 a.m. curfew—constituted a violation of probation when such condition was not part of the original plea agreement or sentence of the court?" (5) "Whether the evidence was sufficient to prove that the defendant violated the curfew?" (6) "Whether the defendant's one-time curfew violation is sufficient to establish a violation of probation?" (7) "Whether the court erred in the disposition phase of this violation of probation hearing when it sentenced the defendant to the entire three year suspended portion of his original sentence?" We have combined these issues where appropriate.

[2] All parties agree that neither they, nor the court, were aware of this error. Upon our discovery of the error in the record, which was in the original conditions of probation form generated by the office of adult probation, we asked the parties to submit supplemental briefs on the effect of that error. Specifically, we asked the parties to brief the following:

"1. What, if any, is the effect of a mistake in the exemplification of the original court-ordered condition of probation, that the defendant possess no weapons, where the office of adult probation incorrectly recorded this condition of probation as no possession/use of drugs on forms that it required the defendant to sign, and the court, without knowledge of the error, considered his refusal to sign the incorrect forms when imposing sentence?

"2. What, if any, is the effect of the office of adult probation's elimination

trial court finding the defendant to be in violation of his probation, but we set aside the sentence imposed and remand the case for resentencing on the basis of the irregularity found in the record, of which the trial court was not made aware.

The following facts and procedural history are relevant to our resolution of the defendant's appeal. The defendant originally was sentenced to five years incarceration, execution suspended after two years, with three years probation, following his guilty plea to carrying a pistol without a permit in violation of General Statutes § 29-35. The court attached two special conditions to the defendant's probation period, namely, that he have no contact with codefendants William Denby and Dennis Williams and that he possess no weapons during the period of his probation. Significantly, there was *no* court-ordered special condition that prohibited the use or possession of narcotics or controlled drugs, although later documents that the defendant was requested to sign erroneously included that prohibition as a *court-ordered* special condition.[3]

of a court-ordered condition of probation (no use possession of weapons), which was imposed by the original sentencing judge, in light of the language in General Statutes § 53a-30 (b) giving that office the authority to 'require that the defendant comply with any or all conditions which the court could have imposed . . . which are not inconsistent with any condition actually imposed by the court'?

"3. What is the effect, if any, of *State* v. *Widlak*, 74 Conn. App. 364 [812 A.2d 134] (2002), and *State* v. *Holmes*, 70 Conn. App. 4 [796 A.2d 561] (2002), on the present case?"

We fully discuss the issue in part III.

[3] We recognize that the conditions of probation form includes several standard preprinted conditions that apply to all probationers, including a prohibition against violating any law of the state of Connecticut. Additionally, in cases of certain felony convictions, such as the defendant's, an additional standard condition of probation is a prohibition against the possession of any firearm or dangerous instrument.

Nevertheless, pursuant to our statutes, a firearm is limited to those weapons "from which a shot may be discharged;" General Statutes § 53a-3 (19); and a dangerous instrument is limited to "any instrument, article or substance which . . . is capable of causing death or serious physical injury

On September 20, 2000, the defendant was interviewed by Bail Commissioner Teresa Dallas while imprisoned and asked to review and sign a supervision notification form and a conditions of probation form, both of which he refused to sign, stating that he was "not going through all this probation stuff." The defendant was released from prison on October 13, 2000, and began serving the probationary portion of his sentence. On October 24, 2000, the defendant was seen by Probation Officer Michael Fernandez of the intake, assessment and referral unit, where the defendant, again, refused to sign the conditions of probation form. On October 30, 2000, Probation Officer Thomas W. Pleckaitis was assigned as the defendant's probation supervisor, and he left a letter for the defendant at what Pleckaitis believed to be the defendant's home requesting that he report to Pleckaitis the next day. When the defendant did not report to Pleckaitis on October 31, 2000, Pleckaitis issued a violation notice to the defendant, which stated, in part, that if the defendant failed to report to the office of adult probation on November 6, 2000, a warrant would be issued for his arrest. The defendant and Pleckaitis, however, met at the New Haven office of adult probation on November 1 or 2, 2000, where Pleckaitis advised the defendant that he was being placed on intensive supervision with special conditions.

Along with the special conditions preprinted on the intensive supervision form, Pleckaitis imposed three

. . . ." General Statutes § 53a-3 (7).

The standard condition that prohibits the use or possession of any firearm or dangerous instrument is not a special court-ordered condition, and it is not the equivalent of a court-ordered prohibition against the possession of *any* weapon, whether capable of causing death or serious physical injury or not. In this instance, the court's prohibition against the possession of any weapons was far more expansive than that provided by the statutory definitions because it prohibited carrying those weapons from which a shot could not be fired or which were incapable of causing death or serious injury.

additional handwritten conditions on the defendant, requiring him to adhere to a 7 p.m. to 7 a.m. curfew, to stay out of bars and nightclubs and to refrain from possessing pagers or beepers. The defendant told Pleckaitis that he would not comply with the curfew condition and refused to sign the intensive supervision conditions form, offering no explanation for his refusal. Pleckaitis advised the defendant that his refusal to comply with the curfew placed him in violation of his probation, and Pleckaitis gave the defendant one week to reconsider his position. Pleckaitis and the defendant met again on November 7, 2000, and the defendant, again, told Pleckaitis that he would not comply with the curfew condition. Pleckaitis informed the defendant that he was now in violation and that he would be pursuing a warrant for his arrest. Pleckaitis also testified that he informed the defendant that he would be conducting a home visit that would result in a violation if the defendant were not at home during the time of his curfew.

On or about November 8, 2000, Pleckaitis filed a violation of probation motion, form JD-CR-59, and an arrest warrant application, which were denied by the court. Following this denial, Pleckaitis, in the company of a police officer, on November 10, 2000, went to the defendant's apartment at approximately 8:30 p.m. Pleckaitis knocked loudly on the door, which went unanswered. He also reported that he heard no noise and saw no lights illuminating from the apartment. On November 13, 2000, Pleckaitis refiled the violation motion and prepared another arrest warrant application, which was approved on November 17, 2000, after which the defendant was arrested. The reasons for seeking a violation of probation for the defendant, as stated in the violation motion, were: "Defendant refuses to comply with the Conditions of Probation in general and a 7 p.m. curfew imposed by the Probation Officer."

At his arraignment, the defendant denied the alleged probation violation, and an evidentiary hearing commenced on May 3, 2001. On May 4, 2001, the court granted the state's motion for a violation of probation, finding that the state had established said violation. The court stated that "the state [had] established to [the court's] satisfaction [by] a preponderance of the evidence that in fact by failing to oblige the special condition of the curfew, both by stating orally that he would not obey the curfew and, secondly, the proof established on November 10 that he was not in fact at his residence . . . after the hours of the curfew, 7 p.m. to 7 a.m., that in fact he is in violation of his probation." Taking into consideration the defendant's refusal to abide by the curfew and his refusal to sign the conditions of probation form, the court ordered the defendant to serve the entire unexecuted portion of his sentence, which amounted to three years. The defendant now appeals from the judgment of the trial court. Additional facts will be recited where necessary.

## I

The defendant first claims that the court improperly determined that the office of adult probation had the authority, pursuant to § 53a-30 (b), to include, as a condition of probation, a curfew without a court hearing and a showing of good cause. He argues that § 53a-30 (c) requires a hearing and a showing of good cause before any additions or enlargements can be made to his conditions of probation. In the alternative, the defendant argues that even if Pleckaitis had the authority to add this condition, he did not have the authority to add it at the start of the defendant's probation because it was not included as part of the defendant's plea agreement, which the court accepted. We do not agree.

Initially, we set forth our standard of review where the essence of the defendant's claim involves the proper

interpretation of § 53a-30 (b) and (c) and the authority the statute bestows on the office of adult probation. "Statutory construction presents a question of law." *State* v. *Marro*, 68 Conn. App. 849, 855, 795 A.2d 555 (2002). Generally, "[i]n construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *State* v. *Parra*, 251 Conn. 617, 622, 741 A.2d 902 (1999).

General Statutes (Rev. to 1997) § 53a-30 (b) provides: "When a defendant has been sentenced to a period of probation, the Office of Adult Probation may require that the defendant comply with any or all conditions which the court could have imposed under subsection (a) which are not inconsistent with any condition actually imposed by the court." General Statutes § 53a-30 (c) provides: "At any time during the period of probation or conditional discharge, after hearing and for good cause shown, the court may modify or enlarge the conditions, whether originally imposed by the court under this section or otherwise, and may extend the period, provided the original period with any extensions shall not exceed the periods authorized by section 53a-29. The court shall cause a copy of any such order to be delivered to the defendant and to the probation officer, if any."

The defendant claims that the office of adult probation cannot add conditions under § 53a-30 (b) without a hearing and a showing of good cause because to do so would give that office more authority than that given to the court. We find no merit to this claim.

"Generally, no part of a legislative enactment is to be treated as insignificant and unnecessary, and there is a presumption of purpose behind every sentence, clause or phrase . . . . Insofar as it is possible, the entire enactment is to be harmonized, each part made operative." (Internal quotation marks omitted.) *State* v. *Thorp*, 57 Conn. App. 112, 119, 747 A.2d 537, cert. denied, 253 Conn. 913, 754 A.2d 162 (2000). We have previously held that § 53a-30 (b) and (c) are not in conflict and that the requirements of subsection (c) need not be impressed on subsection (b). See *State* v. *Mobley*, 33 Conn. App. 103, 633 A.2d 726 (1993), cert. denied, 228 Conn. 917, 636 A.2d 849 (1994).

Our analysis of the terms of § 53a-30 (b) and (c) reveals that the General Assembly dealt expressly with two distinct kinds of special conditions of probation. First, § 53a-30 (c) deals with special conditions of probation "originally imposed by the court under this section or otherwise . . . ." Under this subsection, any change that would *"modify or enlarge"* the conditions that the court originally imposed as part of its sentence must be done by the court itself "after hearing and for good cause shown . . . ." (Emphasis added.)

On the other hand, § 53a-30 (b) permits the office of adult probation, once a defendant has been sentenced, to "require that the defendant comply with any or all conditions which the court *could have* imposed" under § 53a-30 (a) that are not inconsistent with any condition imposed by the court. (Emphasis added.) The defendant urges that we should read into the requirements of § 53a-30 (b) the same requirements of prior notice and hearing as exist for modifications or enlargements of original conditions of probation as are found in § 53a-30 (c). We decline to do so.

Conditions authorized to be enlarged or modified under § 53a-30 (c) are part of a judgment imposed by the

sentencing court and, therefore, are more appropriately the subject of notice and prior hearing before any such modification becomes effective. Postjudgment conditions imposed by adult probation are not a modification or enlargement of some condition already imposed by the court, but are part of an administrative function that subsection (b) expressly authorizes as long as it is not inconsistent with any previously court-imposed condition.

"Section 53a-30 (b) expressly allows the office of adult probation to impose reasonable conditions on probation. . . . [I]n determining whether a condition of probation [is proper] a reviewing court should evaluate the condition imposed under our Adult Probation Act in the following context: The conditions must be reasonably related to the purposes of the [Probation] Act. Consideration of three factors is required to determine whether a reasonable relationship exists: (1) the purposes sought to be served by probation; (2) the extent to which constitutional rights enjoyed by law-abiding citizens should be accorded to probationers; and (3) the legitimate needs to law enforcement." (Citations omitted; internal quotation marks omitted.) *State* v. *Thorp*, supra, 57 Conn. App. 116–17.

The office of adult probation required the defendant in the present case to comply with the terms of his intensive probation, particularly his curfew restriction. The probation office "may require that the defendant comply with any or all conditions which the court could have imposed under [§ 53a-30] (a) which are not inconsistent with any condition actually imposed by the court." General Statutes § 53a-30 (b).

The purpose of probation, as an alternative to incarceration, is to reform the defendant and to preserve the safety of the public. *State* v. *Cyr*, 57 Conn. App. 743, 747, 751 A.2d 420, cert. denied, 254 Conn. 905, 755

A.2d 883 (2000). "To a greater or lesser degree, it is always true of probationers . . . that they do not enjoy the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [probation] restrictions. . . . These restrictions are meant to assure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large." (Internal quotation marks omitted.) *State* v. *Misiorski*, 250 Conn. 280, 288, 738 A.2d 595 (1999). A curfew restriction is clearly consistent with the purposes of probation; see generally *Ramos* v. *Vernon*, 254 Conn. 799, 832, 761 A.2d 705 (2000) (juvenile curfew rationally related to government interest in protecting community); *State* v. *Misiorski*, supra, 288; *State* v. *Cyr*, supra, 747; and such a restriction certainly could have been imposed by the sentencing court. See General Statutes (Rev. to 1997) § 53a-30 (a) (12), now (15).

Furthermore, the curfew restriction in this case was not inconsistent with the special conditions imposed by the sentencing court, which related to an order of no contact and a weapons restriction. For the new condition to be inconsistent, it would have to be "[in]compatible with another fact or claim . . . ." See Merriam-Webster's Collegiate Dictionary (10th Ed. 1993) p. 589. The imposition of a curfew is not incompatible or inconsistent with a restriction on weapons and the prohibition of personal contact.

Accordingly, we conclude that the office of probation had the authority to include a curfew restriction on the defendant at the start of his probationary period without a court hearing and a showing of good cause, and that such a condition was not inconsistent with the purposes of probation.

II

The defendant next claims that the court improperly found that there was sufficient evidence to establish

that he had violated his probation. He argues that (1) his assertion to Pleckaitis that he could not comply with the curfew condition does not constitute a violation of probation, (2) the single visit to the defendant's apartment where no one answered the door is insufficient to prove that he violated his probation, and (3) even if he was not at home at the time of Pleckaitis' visit, this one time transgression was not sufficient to establish a violation of probation. The defendant also argues that when Pleckaitis advised the defendant that he was in violation of his probation, that advisement relieved the defendant of the obligation to adhere to his conditions because he was on notice that he was in violation of probation and subject to arrest. We are not persuaded by these arguments.

Before assessing the defendant's claims, we set forth our well settled standard of review in probation revocation cases. "The [probation revocation] hearing itself involves two distinct components. Initially, the court conducts an adversarial evidentiary hearing to determine whether the defendant has indeed violated a condition of probation. *State* v. *Davis*, 229 Conn. 285, 289, 641 A.2d 370 (1994); *State* v. *Gaston*, 56 Conn. App. 125, 129, 741 A.2d 344 (1999). The state must establish a violation of probation by a fair preponderance of the evidence. *State* v. *Davis*, supra, 295. That is to say, the evidence must induce a reasonable belief that it is more probable than not that the defendant has violated a condition of his or her probation. Id., 302. This court will not disturb a trial court's factual determination that a violation has occurred unless that determination is clearly erroneous. *State* v. *Treat*, 38 Conn. App. 762, 769, 664 A.2d 785, cert. denied, 235 Conn. 920, 665 A.2d 907 (1995); *State* v. *Scott*, 31 Conn. App. 660, 668, 626 A.2d 817 (1993)." (Internal quotation marks omitted.) *State* v. *Chambers*, 61 Conn. App. 781, 786–87, 767 A.2d 1215, cert. denied, 256 Conn. 903, 772 A.2d 597 (2001).

The evidence adduced at the defendant's violation of probation hearing established that the defendant, after being assigned to Pleckaitis, was placed on intensive supervision and was ordered to adhere to a 7 p.m. to 7 a.m. curfew, among other conditions. The defendant not only refused to sign the intensive supervision form but also refused to comply with the curfew. After giving the defendant additional time to agree to comply with his curfew condition and being informed by the defendant that he still would not comply, Pleckaitis went to the defendant's apartment to determine whether he was home during his curfew hours. No one answered the defendant's door and no lights were illuminating the apartment. The defendant provided no explanation as to his refusal to sign the intensive supervision form or to adhere to the curfew restriction.

After carefully considering the evidence, the court found the defendant to be in violation of his probation, concluding that the state had established to the court's satisfaction that "by failing to oblige the special condition of the curfew, both by stating orally that he would not obey the curfew and, secondly, the proof established on November 10 that he was not in fact at his residence . . . after the hours of the curfew, 7 p.m. to 7 a.m., that in fact he is in violation of his probation."

The defendant's conjecture that his refusal to sign the intensive supervision form was insufficient to support a finding that he violated his probation is unavailing. The court did not base its finding solely on the defendant's refusal to sign this form. The court specifically found that the defendant was not at home during the hours of his curfew. Additionally, the defendant's contention that there may have been innocent explanations for his failure to answer the door during curfew hours is also unavailing. There is nothing in the record to suggest that he offered any explanations to Pleckaitis or to the

trial court as to why he did not answer the door if he were, in fact, at home.

The additional argument presented by the defendant, that his failure to adhere to the curfew restriction was only "one minor transgression" that was insufficient to establish a violation of probation also lacks merit. "A critical element of probation is the supervisory role of the state. . . . That role cannot be diluted by a claim that one or more of the conditions were not substantial. All of the conditions at issue related to the state's interest in supervising the defendant, and were not, therefore, mere technical violations." (Citation omitted.) *State* v. *Navikaukas*, 12 Conn. App. 679, 683, 533 A.2d 1214 (1987), cert. denied, 207 Conn. 804, 540 A.2d 74 (1988). Accordingly, we are unwilling to hold that one violation of a condition of probation is merely a "minor transgression."

The defendant also argues that "[w]hen a probationer is formally in violation status, and awaiting a revocation hearing, the conditions of probation do not apply." Therefore, the defendant argues, once Pleckaitis informed him that he was in violation, he had no obligation to adhere to the curfew by application of General Statutes § 53a-31 (b). We find no merit to the argument that a defendant is excused from complying with conditions of probation once a probation officer informs him that he is in violation of that probation.

General Statutes (Rev. to 1997) § 53a-31 (b) provides that the "[i]ssuance of a warrant or notice to appear for violation pursuant to section 53a-32, shall interrupt the period of the sentence as of the date of such issuance until a final determination as to the violation has been made by the court. . . ."

In this case, there was no warrant issued at the time the defendant failed to comply or refused to comply with his curfew. The defendant informed Pleckaitis on

November 1, 2000, and again on November 7, 2000, that he would not comply with the curfew. Pleckaitis informed him that this was a violation of probation and that he would be conducting a home visit to ensure that the defendant was in compliance. Pleckaitis did not tell the defendant that he was relieved of the obligation to adhere to his conditions of probation. In fact, he informed the defendant that he would be conducting a home visit and that if the defendant were not at home during curfew hours, he would be in violation of his probation. On November 10, 2000, such a visit took place, and the defendant was not at home during his curfew. A warrant was issued on November 17, 2000, on the basis of this curfew violation.

If, as the defendant argues, the issuance of a warrant, in accordance with § 53a-31 (b), relieves a probationer from complying with his conditions of probation, such an argument would be meritless in a case, such as this one, where the acts perpetrated in violation of probation were committed before the warrant issued.

Furthermore, even if the violation occurred after the warrant had issued, we still would find no merit to the defendant's argument that the conditions no longer applied. The plain language of § 53a-31 (b) provides that the period of the sentence is interrupted by the issuance of a warrant, referring to a tolling of the time remaining on a defendant's sentence. This ensures that if a defendant has a six month suspended sentence, for example, and a violation of probation warrant is issued and the violation hearing is not concluded for one year that the defendant still has six months remaining on the sentence. We find it illogical and unsupported that any conditions attached to the probation also would be tolled and that the defendant would be relieved from further compliance with those orders of the court solely because a warrant was issued on the basis of his vio-

lating one or more of those orders.[4] After a careful review of the statute, we find no support for the defendant's contention that once a warrant issues on a violation of probation, the probationer's conditions no longer apply.

We conclude, on the basis of the record before us, that the court's finding that the defendant violated the terms of his probation by refusing to comply and by failing to comply with the curfew restriction imposed by the office of probation was not clearly erroneous.

### III

The defendant also claims that the court improperly revoked his probation and ordered him to serve the entire three year suspended portion of his sentence. We do not reach the merits of this claim because we set aside the sentence imposed on the defendant and remand the case for resentencing on the basis of the irregularity discovered in the conditions of probation form for which we requested supplemental briefs.[5]

The defendant argues, and we agree, that he should not be penalized for his refusal to sign a binding document that improperly exemplified the orders of the court. Specifically, the defendant argues: "From the court's own words, it was the defendant's initial unwill-

---

[4] In fact, to cite one example, in State v. Jones, 67 Conn. App. 25, 26, 787 A.2d 43 (2001), the defendant was arrested on September 26, 1999, and charged with a violation of probation for violating the laws of the state of Connecticut. The state later filed a second information charging the defendant with an additional violation of probation for violating Connecticut law on September 28, October 9 and October 14, 1999. All of these additional offenses occurred after the initial arrest for violating probation. After an April 18, 2000 hearing, the court found the defendant in violation of probation on both informations. Id. If, as the defendant argues, the conditions of probation cease to apply after a warrant issues, then a defendant could never be charged with subsequent violations after being arrested for one violation. The defendant provides no convincing support for this argument and we find it without merit.

[5] See footnote 2.

ingness/refusal to sign the [c]onditions of [p]robation that in substantial part led the court to impose . . . the entire three years 'owed' by the defendant."

In considering the effect of this irregularity, we invoke plain error review. "[P]lain error [review] is properly reserved for those extraordinary situations where the error is so obvious that the fairness and integrity of and public confidence in the judicial process would be impaired were we to fail to address an issue that was not raised or preserved at trial." (Internal quotation marks omitted.) *State* v. *Jones*, 67 Conn. App. 25, 27, 787 A.2d 43 (2001).

We begin our examination of this irregularity by recalling the court's reasons for revoking the defendant's probation and sentencing him to serve the entire three year suspended portion of his sentence. During the sentencing phase of the defendant's violation of probation proceeding, the court specifically stated that "it is evident to me that if you [the defendant], in fact, had abided by the curfew that we might not even, in fact, be here today, yet *there is a reason for the violation because up to that point you had refused to sign the conditions, which alone might have well constituted a violation of your probation.*" (Emphasis added.) This statement indicates that the court took into consideration, with much emphasis, the defendant's continued refusal to sign the conditions of probation form.

After thoroughly reviewing the record, however, we discovered an error in the conditions of probation form as well as in the supervision notification form that the defendant was asked to sign and which he refused to sign. When the defendant was sentenced on the underlying charge of carrying a pistol without a permit, the court specifically ordered, as conditions of probation, "[n]o possession of any weapons during the period of probation [and] no contact with the codefendants

Denby and Williams." The order of probation, form JD-CR-66, prepared by the assistant clerk, contained the two special conditions that were ordered by the court. The conditions of probation form, JD-AP-110, prepared by the office of adult probation, contained the standard conditions of probation and contained two "court-ordered special conditions." According to this form, the court-ordered special conditions were incorrectly stated as "no contact with person [and] no use/possess *drugs*."[6] (Emphasis added.) The supervision notification form contained the same error. These forms clearly failed to express the proper orders of the court and were, in fact, undeniably wrong.

Because the court in the revocation proceeding specifically mentioned and took into consideration the defendant's repeated refusal to sign these forms, which incorrectly exemplified the court's own order, we have no way of determining whether the court, in exercising its discretion, would have imposed the same sentence if the defendant had, in fact, signed those forms or if they were not an issue in the proceeding.[7] We do not make light of the defendant's poor attitude or his apparent unwillingness to cooperate with the office of adult probation. Nevertheless, whatever the defendant's subjective attitude in refusing to sign these forms, he could not objectively have been required to sign something that was clearly wrong in expressing, as a court-ordered

[6] See footnote 3.

[7] We find this case distinguishable from two of our recent cases, *State* v. *Widlak*, 74 Conn. App. 364, 370–71, 812 A.2d 134 (2002), and *State* v. *Holmes*, 70 Conn. App. 4, 5 n.2, 796 A.2d 561 (2002), in which we declined to address inadequately briefed claims regarding the sentencing phase of the violation proceeding, leaving open the question of whether a conclusion that the trial court had considered erroneous information in the sentencing of the defendant would permit a remand for resentencing. The present case is further distinguishable because, here, we are faced with an error in the exemplification of a court order setting forth an erroneous condition of probation that the defendant refused to sign.

condition of probation, something that the court had not ordered and by eliminating something that the court had, in fact, ordered. The error by the office of adult probation in the exemplification of the original sentence and conditions is obvious. The fairness, integrity and public confidence in the judicial process would be undermined if we left it unaddressed.

"It is axiomatic that this court is vested with the authority to remand a case for resentencing. See, e.g., *State* v. *Hanson*, 210 Conn. 519, 556 A.2d 1007 (1989); *State* v. *Carpenter*, 19 Conn. App. 48, 562 A.2d 35, cert. denied, 213 Conn. 804, 567 A.2d 834 (1989). In doing so, however, it is not this court's function to prescribe the new sentence. *Miller* v. *Commissioner of Correction*, 29 Conn. App. 773, 780, 617 A.2d 933 (1992); *State* v. *Schaeffer*, 5 Conn. App. 378, 390, 498 A.2d 134 (1985). The appropriate disposition is a remand to the trial court with direction to resentence the defendant." *State* v. *Dennis*, 30 Conn. App. 416, 426, 621 A.2d 292, cert. denied, 226 Conn. 901, 625 A.2d 1376 (1993). In exercising its discretion, and "[o]n the basis of its consideration of the whole record, the trial court may continue or revoke the sentence of probation . . . [and] . . . require the defendant to serve the sentence imposed or impose any lesser sentence." (Internal quotation marks omitted.) *State* v. *Jones*, supra, 67 Conn. App. 28.

The judgment is reversed only as to the sentence imposed and the case is remanded with direction to resentence the defendant. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.