## STATE OF CONNECTICUT *v.* WILLIAM ARMSTRONG
## (AC 24120)

West, DiPentima and Mihalakos, Js.

---

[5] Those factors were enumerated in our discussion of our standard of review. See part I.

Argued October 12—officially released December 28, 2004

*Jeanne M. Zulick*, special public defender, for the appellant (defendant).

*Eileen F. McCarthy*, assistant state's attorney, with whom, on the brief, were *Patricia M. Froehlich*, state's attorney, and *Vincent J. Dooley*, senior assistant state's attorney, for the appellee (state).

*Opinion*

WEST, J. The defendant, William Armstrong, appeals from the judgment of the trial court revoking his probation and committing him to the commissioner of correction to serve two years of a previously suspended eight year sentence on an underlying narcotics conviction. The dispositive issue in this appeal is whether the court relied improperly on the defendant's positive drug test

to find that he violated a condition of his probation.[1] We affirm the judgment of the trial court.

In 1998, the defendant was convicted of possession of narcotics with intent to sell in violation of General Statutes § 21a-277 (a) and sentenced to eight years imprisonment, execution suspended, and five years probation. As special conditions of his probation, the defendant was forbidden from using or possessing illegal drugs, required to complete counseling as recommended by the office of adult probation and subject to random urinalysis, with the understanding that a positive drug test would constitute a probation violation.

After reviewing and signing the conditions of his probation, the defendant, a Massachusetts resident, requested an interstate compact transfer with the commonwealth of Massachusetts. See General Statutes § 54-186 et seq. During his initial interview with a Massachusetts probation officer, the defendant submitted a urine sample, which tested positive for cocaine and marijuana. The probation officer notified the defendant's Connecticut probation officer, Alan Chubbuck, of the positive drug test and directed the defendant to return to Connecticut. Chubbuck later contacted the defendant, instructing him to enter into and successfully complete an inpatient substance abuse treatment program, after which he would be resubmitted for probation supervision in Massachusetts.

Less than five months after he was notified that the defendant had tested positive for illegal drugs, Chubbuck received an incident report from the Webster, Massachusetts, police department, stemming from its

---

[1] Because that claim is dispositive of the appeal, we decline to address the defendant's claim that the court improperly admitted into evidence records that should have been erased by operation of law pursuant to General Statutes § 54-142a.

yearlong investigation into the defendant's drug related activities. During the course of the investigation, Thomas Ralph, deputy chief of the Webster police department, supervised approximately six controlled buys from the defendant and, on the basis of those buys, obtained a search warrant for the defendant's apartment in Webster. With the search warrant in hand, the police eventually tracked the defendant to a local bar, where they sent in a confidential informant to make a controlled buy. Following a successful buy, the police arrested the defendant a short distance from the bar and then executed the search warrant for his apartment. The defendant subsequently was indicted on a charge of possession of narcotics with intent to sell, but the Webster district attorney's office dismissed the indictment because a Massachusetts Superior Court judge suppressed the evidence seized from the defendant's apartment on the ground that there was no probable cause to search that location.

Approximately one month after he received the incident report from the Webster police department, Chubbuck secured an arrest warrant for the defendant on the basis of the alleged violation of certain conditions of probation. Following an evidentiary hearing on that matter, the court found that the defendant had violated the conditions of his probation. In so finding, the court "note[d] that subsequent to the signing of the conditions of probation, [the defendant] did test positive for cocaine and marijuana, and that he was observed by police officers to be engaged in selling drugs. The evidence establishes that the defendant was selling drugs and using drugs." The court then sentenced the defendant to serve two years of the unexecuted portion of the underlying narcotics conviction. This appeal followed.

The defendant claims that the court relied improperly on his positive drug test in Massachusetts to find that he violated a condition of his probation. In making his

claim, the defendant does not argue that the state failed to prove by a preponderance of the evidence that he tested positive for drug use in Massachusetts. Indeed, he concedes that it did so. He argues, instead, that after testing positive for drug use in Massachusetts, he and Chubbuck entered into an agreement in which Chubbuck agreed to resubmit the defendant for probation supervision in Massachusetts if he completed an inpatient substance abuse treatment program. The defendant argues that because he completed such a program, the state—and, by extension, the court—could not, by virtue of the agreement, use his positive drug test as a basis to revoke his probation. We disagree with the defendant.

Initially, we clarify that the question is not whether Chubbuck actually entered into the agreement; it is whether, assuming that he did enter into the agreement, he was authorized to modify a court-imposed special condition of the defendant's probation, namely, that a positive drug test would constitute a probation violation. "Because the material facts are not in dispute and the issue before us presents a pure question of law, our review is plenary." *Tyson* v. *Commissioner of Correction*, 261 Conn. 806, 816, 808 A.2d 653 (2002), cert. denied sub nom. *Tyson* v. *Armstrong*, 538 U.S. 1005, 123 S. Ct. 1914, 155 L. Ed. 2d 836 (2003).

We addressed a similar issue in *State* v. *Strickland*, 42 Conn. App. 768, 773, 682 A.2d 521 (1996), rev'd on other grounds, 243 Conn. 339, 703 A.2d 109 (1997). In that case, the sentencing court ordered the defendant, as a condition of his probation, to report as directed to his probation officer. Id., 770. At the revocation of probation hearing, the court found that he had failed to report on three occasions. Id., 771. On appeal, the defendant claimed that his failure to report to his probation officer on two of the occasions could not properly be held to be violations of the conditions of his proba-

tion. Id., 773. Likening the conditions of probation to the terms of a contract, which could be modified by the parties' actions, the defendant argued that "because the probation department had accepted the defendant's erratic manner of reporting to the probation officer, it cannot now arbitrarily and retroactively choose two dates on which the defendant failed to report as violations of the condition that he report to a probation officer as directed." Id. In rejecting the defendant's argument, we stated that "[p]ursuant to General Statutes § 53a-30 (c)[2] the court may modify or enlarge a defendant's conditions of probation. . . . *This power is not given to the office of adult probation.*" (Citation omitted; emphasis added; internal quotation marks omitted.) *State* v. *Strickland,* supra, 774. Thus, we held that "[b]ecause the defendant concedes that he failed to report to [his probation officer] as directed [on two occasions], the trial court's finding was not clearly erroneous." Id.

Here, as a special condition of his probation, the defendant was subjected to random urinalysis, with the understanding that a positive drug test would constitute a probation violation. Within six months of being sentenced, the defendant tested positive for drug use. With *Strickland* as guidance, even if we assume arguendo that Chubbuck had entered into an agreement with the defendant that the positive drug test in Massachusetts could not be used against the defendant as a basis to revoke probation, Chubbuck did not have the authority

---

[2] General Statutes § 53a-30 (c) provides: "At any time during the period of probation or conditional discharge, after hearing and for good cause shown, the court may modify or enlarge the conditions, whether originally imposed by the court under this section or otherwise, and may extend the period, provided the original period with any extensions shall not exceed the periods authorized by section 53a-29. The court shall cause a copy of any such order to be delivered to the defendant and to the probation officer, if any."

to do so. The authority to modify the original conditions of probation is reserved for the court. See General Statutes § 53a-30 (c).

The defendant argues nevertheless that Chubbuck derived authority from § 53a-30[3] essentially to vitiate a court-ordered special condition of the defendant's probation. But that argument fails to grasp the distinction between subsections (b) and (c) of § 53a-30. Subsection (c) concerns "special conditions of probation originally imposed by the court under this section or otherwise . . . . Under this subsection, any change that would *modify or enlarge* the conditions that the court originally imposed as part of its sentence must be done by the court itself after hearing and for good cause shown . . . ." (Emphasis in original; internal quotation marks omitted.) *State* v. *Johnson*, 75 Conn. App. 643, 651, 817 A.2d 708 (2003). "Conditions authorized to be enlarged or modified under § 53a-30 (c) are part of a judgment imposed by the sentencing court . . . ." Id., 651–52. Because the sentencing court in this case ordered as a special condition of the defendant's probation that a positive drug test would result in a probation violation, the court alone was authorized to "modify or enlarge" that condition.

[3] At oral argument, the defendant's counsel argued that Chubbuck derived authority to enter into the alleged agreement from General Statutes § 53a-32. Given that § 53a-32, "Violation of probation or conditional discharge. Arrest. Hearing. Disposition," authorizes nothing of the sort, we assume that she meant General Statutes § 53a-30, which "is concerned with, inter alia, conditions of probation imposed at the time of sentencing and with the enlargement or modifications whether originally imposed by the court [under § 53a-30] or otherwise . . . . In addition, it also authorizes, once probation has been imposed, that the office of adult probation may require that the defendant comply with any/or all conditions which the court *could have imposed* under subsection (a) which are not inconsistent with any condition actually imposed by the court." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Smith*, 207 Conn. 152, 168, 540 A.2d 679 (1988).

As for § 53a-30 (b),[4] it "permits the office of adult probation, once a defendant has been sentenced, to require that the defendant comply with any or all conditions which the court *could have* imposed under § 53a-30 (a) that are not inconsistent with any condition imposed by the court." (Emphasis in original; internal quotation marks omitted.) *State* v. *Johnson*, supra, 75 Conn. App. 651. Under that section, Chubbuck could have required the defendant to comply with any of the sixteen conditions listed in subsection (a), including those not expressly ordered by the court at the defendant's sentencing hearing. See, e.g., *State* v. *Thorp*, 57 Conn. App. 112, 117–18, 747 A.2d 537 (determining that § 53a-30 (b) authorized office of adult probation to require probationer convicted of sexual assault to receive sex offender treatment, even though sentencing judge had not imposed such condition), cert. denied, 253 Conn. 913, 754 A.2d 162 (2000). But Chubbuck could not enter into an agreement with the defendant such that the positive drug test in Massachusetts could not be used to revoke probation, as such an agreement would have been in direct contradiction to the condition imposed by the sentencing court that a positive drug test would result in a probation violation. See General Statutes § 53a-30 (b).

Accordingly, we conclude that it was not improper for the court to rely on the defendant's positive drug test to find that he had violated a condition of his probation. As such, his probation could be revoked on that basis alone. See *State* v. *Widlak*, 74 Conn. App. 364, 370, 812 A.2d 134 (2002) ("[o]ur law does not require the state to prove that all conditions alleged were vio-

---

[4] General Statutes § 53a-30 (b) provides: "When a defendant has been sentenced to a period of probation, the Court Support Services Division may require that the defendant comply with any or all conditions which the court could have imposed under subsection (a) of this section which are not inconsistent with any condition actually imposed by the court."

lated; it is sufficient to prove that one was violated"), cert. denied, 264 Conn. 902, 823 A.2d 1222 (2003).

The judgment is affirmed.

In this opinion the other judges concurred.